[No. B014740. Second Dist., Div. Five. May 9, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
ANITA LOUISE WILLIAMS, Defendant and Appellant.

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Richard Avila, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert R. Anderson and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ASHBY, J.**—A jury convicted appellant Anita Louise Williams of first degree felony murder (Pen. Code, §§ 187, 189) and robbery (Pen. Code, § 211). She was sentenced to state prison for 25 years to life for the murder (count I) and to the upper term of 5 years for the robbery (count II), the latter to be served concurrently with the sentence on count I.

Appellant contends that her sentence violates the cruel or unusual punishment prohibition of the state Constitution (Cal. Const., art. I, § 17) and that the trial court erred in denying her request for jury instructions on lesser included offenses to the murder. Both arguments are based on *People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697]. *Dillon* held that the penalty for first degree felony murder is subject to the prohibition against cruel or unusual punishments, which includes the rule that a punishment is impermissible if grossly disproportionate to the offense or the culpability of the offender.

We hold that *Dillon* does not transform the constitutional question of whether a sentence is cruel or unusual in a particular case into a jury question. We further hold that the sentence in this case does not violate the rule of proportionality and affirm the judgment.

### FACTS

On November 20, 1984, Robert Bailey left his Long Beach home driving a Pontiac Grand Prix; he never returned. His body was found in the trunk of the abandoned Grand Prix two days later, on Thanksgiving Day.

Appellant and her boyfriend, John Whiteside, and Richard Foster,[1] planned to commit a robbery on a "trick" that appellant would set up. Appellant had been carrying a 12- or 14-inch long pipe of lead or steel. Whiteside took the pipe from her purse to use in the robbery.

Bailey made the fatal mistake of engaging appellant in a conversation as she walked along Pacific Coast Highway. He apparently believed her to be a prostitute and invited her into his car. With appellant in his car and at her direction, Bailey drove to the alley behind a nearby fast food restaurant. While Bailey and appellant sat in the car, Whiteside approached the car on the driver's side and Foster on the passenger side. Whiteside got into the front seat, pushing Bailey between him and appellant. Foster got into the

---

[1]Appellant, Whiteside and Foster were originally charged on both counts by the same information. Their trials were severed on a motion by the People.

back seat. As Whiteside drove, Foster struck Bailey in the head with his fist and took Bailey's wallet and diamond ring. When they arrived at a dirt alley in Long Beach, Bailey was taken to the back of the car. He pleaded with his captors not to hurt him. Foster insisted that Bailey would have to be killed to keep him from identifying them. Whiteside hit Bailey in the head twice with the pipe. Appellant helped put Bailey into the trunk. She had his blood on her hands; Foster had blood all over his clothing. With Bailey still in the trunk,[2] they went to purchase drugs. Bailey's diamond ring was traded for a $25 rock of cocaine. The car was abandoned in a residential area in Long Beach.

## DISCUSSION

Appellant's first contention is that the trial court erred in denying her requested jury instructions.[3] Appellant bases her position on an erroneous premise. She contends that *People v. Dillon, supra,* 34 Cal.3d 441, stands for the proposition that an individual's culpability must be assessed by the jury regardless of the fact that the individual is being prosecuted for felony murder. Appellant's reasoning begins with Justice Kaus's concurring opinion in *Dillon. (Id.,* at pp. 490-493.) Appellant argues that Justice Kaus's "Jury Nullification" theory requires that in a felony-murder case the jury should be permitted to determine the degree of the defendant's guilt. From there appellant argues that each of the other justices implicitly adopted Justice Kaus's view. A reading of the opinion refutes that argument.[4]

---

[2] The coroner was unable to establish the precise time of death. She testified that Bailey could have died instantly, but there were discolorations to the injured areas which indicated that he remained alive for an unknown time after the initial injury. He could have lived only minutes or as long as an hour after being hit.

[3] These included three modified versions of CALJIC No. 8.21. The first directed that a murder committed in the perpetration of a robbery could result in a verdict of first degree murder, second degree murder, or manslaughter. The second instructed that the jurors could return a general verdict of guilty and recommend that the degree of the homicide be set at second degree murder or manslaughter, if they believed that a verdict less than first degree murder was appropriate. The third instructed that felony murder does not apply to one who aids and abets the underlying felony "if the perpetrator commits the act that causes death, outside the scope of the robbery."
Appellant also requested the following instructions: CALJIC No. 8.30 (second degree murder), CALJIC No. 8.70 (duty of jurors to determine degrees of murder), CALJIC No. 8.74 (unanimous agreement as to offenses—first or second degree murder or manslaughter).

[4] The lead opinion in *Dillon* was written by Justice Mosk, with Chief Justice Bird and Associate Justice Kingsley of the Second District Court of Appeal, assigned by the Chairperson of the Judicial Council, signing that opinion and writing separate concurrences. Separate concurrences were written by Justice Reynoso, and as mentioned, Justice Kaus. Justices Richardson and Broussard each wrote a concurring and dissenting opinion. None of the other justices supported the "Jury Nullification" theory. The theory was specifically rejected in the lead opinion. (34 Cal.3d at pp. 487-488, fn. 39.)

■ Appellant's argument is further flawed because it overlooks the rule that the question of whether a punishment is cruel or unusual is to be resolved by the court. (*In re Lynch* (1972) 8 Cal.3d 410, 414-415 [105 Cal.Rptr. 217, 503 P.2d 921].) The issue presents no question for the trier of fact. While *Dillon* does not explicitly state this rule, the language of the opinion supports it. ■ Under the rule of *Dillon,* if a jury finds that the defendant committed or attempted to commit a felony listed in Penal Code section 189 and in that commission or attempted commission a homicide occurs, the jury must find the defendant guilty of first degree felony murder.

The Court of Appeal cases cited by appellant do not support her position. *People* v. *Martin* (1983) 150 Cal.App.3d 148 [197 Cal.Rptr. 655], did not involve a felony murder. Neither *People* v. *Munoz* (1984) 157 Cal.App.3d 999 [204 Cal.Rptr. 271], nor *People* v. *Leigh* (1985) 168 Cal.App.3d 217 [214 Cal.Rptr. 61], suggests that the *Dillon* analysis is properly the function of the trier of fact, though *Leigh* holds that the analysis is not solely within the province of the appellate court: "[N]othing in *Dillon* . . . precludes the *trial court* from performing such a function. We believe the *trial judge* is uniquely suited to do the kind of balancing of factors enunciated in *Dillon.*" (*People* v. *Leigh, supra,* 168 Cal.App.3d at p. 223, italics added.) Where a challenge based on *Dillon* is raised in the trial court, it is an issue to be decided by the trial judge.

■ We now turn to appellant's contention that the 25-years-to-life sentence she received is cruel or unusual punishment under *Dillon.* She argues that she is less culpable than the defendant in *Dillon.* We must consider whether her sentence is disproportionate to her culpability by examining the nature of the offense and the nature of the offender with particular regard to the degree of danger that both present to society. (*People* v. *Dillon, supra,* 34 Cal.3d at p. 479.)

Appellant planned the robbery with Whiteside and Foster. Though she told the police that she participated on the condition that no one would be hurt, she knew that Whiteside was carrying the lead pipe that he had obtained from her. She was responsible for the victim being where Whiteside and Foster could capture him. The victim was not killed because the criminal panicked, as in *Dillon.* The decision to kill him was calculated; the purpose of the murder was to leave no witness. Appellant maintains that she asked her companions not to hurt Bailey, yet she helped put Bailey's body in the trunk. Appellant and her companions, with a severely bleeding man in the trunk of the car, drove that car to obtain drugs and, presumably, consumed the drugs while he was still in the trunk. Appellant did not know whether he was dead or alive, and obviously did not care whether he lived or died. She did not try to notify anyone of Bailey's presence in the car;

appellant made no attempt to call police, ambulance, or even a friend to report the whereabouts of Mr. Bailey.

Appellant was a 24-year-old adult at the time the crimes were committed. She had a prior conviction for battery (Pen. Code, § 242) for which she was put on probation for two years. She was not the immature teenage defendant of *Dillon.* "The facts of the crime as committed in this case and the particular nature of the offender who committed that crime . . . prevent us from taking a benign or sympathetic view of [appellant's] individual culpability. We therefore decline to reduce [her] conviction . . . ." (*People v. Munoz, supra,* 157 Cal.App.3d 999, 1015.)

The judgment is affirmed.

Feinerman, P. J., and Eagleson, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 13, 1986.