[No. B024330. Second Dist., Div. Four. Aug. 26, 1987.

THE PEOPLE, Plaintiff and Appellant, v.
JESUS SANDOVAL, Defendant and Respondent.

**COUNSEL**

Ira Reiner, District Attorney, Donald J. Kaplan, Arnold T. Guminski and Dirk L. Hudson, Deputy District Attorneys, for Plaintiff and Appellant.

Edward P. George, Jr., for Defendant and Respondent.

**OPINION**

**McCLOSKY, J.**—On July 17, 1987, we filed an opinion in this case. Since that time, we have received and considered a petition for rehearing and an answer thereto. We granted rehearing and reheard oral argument. We now issue our opinion.

Respondent Jesus Sandoval was convicted following a court trial of oral copulation with a child under the age of 14, and more than 10 years younger than he, in violation of Penal Code section 288a, subdivision (c). The court found true the allegation that respondent occupied a position of special trust and committed an act of substantial sexual conduct. (Pen. Code, § 1203.066, subd. (a)(9).) Respondent was sentenced to the low term of three years. The judgment was affirmed on appeal. On return of the remittitur, the trial court vacated respondent's three-year sentence, suspended criminal proceedings, and granted probation conditioning its grant of probation upon respondent serving the first fifty-two days in county jail. The court then gave respondent credit for 52 days time he had already served.

The People appeal from that order, contending: "A. The trial court erred in failing to follow the law of the case set by this court (holding the mandatory minimum sentence to be constitutionally applicable to respondent); B. The trial court erred on the merits in determining the three year minimum penalty to be cruel or unusual as applied to a child molester who exploits a position of special trust, poses as a law enforcement officer, and walks the child behind a wall in order to engage in substantial sexual conduct with a seven year old, especially where psychotherapists are divided as to the danger of repeated offense, and suitability for probation; C. Given the legality of the sentence, the trial court erred in entertaining a motion purportedly under Penal Code section 1181 to reconsider the sentence and grant proba-

tion after appellate affirmance of the conviction and sentence; D. The trial court erred in striking the Penal Code section 1203.066 (position of special trust/substantial sexual conduct) finding in order to hold the statutory penalty unconstitutional as applied to respondent."

Respondent was the child victim's "tee-ball" coach. The offense is described in the unpublished opinion affirming respondent's conviction: "On June 20, 1983, [the child] went to the first practice, accompanied by a babysitter. While at practice, [respondent] took [the child] behind a tree where he displayed a badge that had a bear and a star. Thereafter, [respondent] pulled [the child's] trousers down and committed an act of oral copulation upon the boy. After the act was completed, [respondent] asked [the child] what kind of candy bar he wanted and told [the child] not to tell anyone about the oral copulation." The court's footnote 1 provides: "The mother of one of [the child's] teammates testified [respondent] told her that he was a deputy sheriff." (*People* v. *Sandoval* (Jan. 24, 1986) B007256.)

Following respondent's conviction, the court appointed two doctors to examine respondent and submit psychiatric reports to the court. One doctor opined that respondent is an emotionally immature individual, prosocially motivated, and not inclined to repeat the same or similar behavior if allowed to remain in the community and receive appropriate counseling. The second doctor considered respondent to be a danger to the safety of the community and at risk for repeating the same type of offense, and did not recommend probation. A third opinion was offered by a psychologist at the request of respondent. The psychologist described respondent as a "relatively limited risk to the community at large" who would probably "rigidly adhere to all probationary conditions."[1] The reports note that respondent suffered a serious head injury in an automobile accident in 1981.

The probation officer, in his first supplemental report, recommended that in light of the conflicting information received from the appointed psychiatrists, respondent be committed to the Department of Corrections for diagnosis and recommendation. Respondent was committed for diagnosis and recommendation pursuant to Penal Code section 1203.03. The Department of Corrections recommended that respondent be considered for a formal grant of probation.

The People submitted points and authorities contending that the "court is without discretion to grant probation under P. C. 1203.066." The defense

---

[1] We hereby take judicial notice of the confidential documents from the record in *People* v. *Sandoval* (Jan. 24, 1986) No. B007256, lodged with the court by appellant. (Evid. Code, §§ 452, subd. (d) and 459.)

submitted points and authorities contending that respondent was eligible for probation on the grounds that a position of special trust had not been established within the meaning of Penal Code section 1203.066, subdivision (a)(9), and that imposition of a state prison sentence would constitute cruel or unusual punishment.

After stating "no further social purpose would be served in sending Mr. Sandoval to prison in terms of his own punishment or to benefit society with respect to deterring conduct of others" and after discussing *People* v. *Superior Court (Beasley)* (1984) 159 Cal.App.3d 131 [205 Cal.Rptr. 413], the trial court stated that it "declines to make an exception to the law," denied probation and sentenced respondent to the low term of three years in state prison.

Respondent appealed. He argued with regard to the issue that "under the Lynch-Foss guidelines, appellant's commitment to state prison for three years is cruel and unusual punishment, and grossly disproportionate to appellant's individual culpability." The appellate court affirmed the judgment of the trial court, holding that the conviction was supported by sufficient evidence, that respondent was properly found to have occupied a position of special trust within the meaning of subdivision (a)(9) of section 1203.066 of the Penal Code, and that the trial court had properly determined that the statutorily mandated state prison sentence did not constitute cruel or unusual punishment. With regard to cruel or unusual punishment that opinion states: " 'Appellant's final contention must also fail. "[A]t the time of sentencing, the trial court was aware of the decision in *People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697] and apparently of its power to consider whether the statutorily mandated state prison sentence might constitute cruel and unusual punishment, and it determined that question adversely to [appellant]." (*People* v. *Hesslink* (1985) 167 Cal.App.3d 781, 794, 795 [213 Cal.Rptr. 465].)' "

In his petition for rehearing, respondent again argued that "appellant's commitment to state prison for three years is cruel and unusual punishment" within the *Lynch-Foss* guidelines (*In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d. 921]; *In re Foss* (1974) 10 Cal.3d 910 [112 Cal.Rptr. 649, 519 P.2d 1073], "and grossly disproportionate to appellant's individual culpability." Petition for rehearing was denied. Appellant made the same argument in his petition for review in the Supreme Court. Petition for review was denied.

Following the return of the remittitur, the case was called for probation and sentencing on September 17, 1986. The court had before it the probation officer's second supplemental report, made in connection with the September 1986 hearing which report revealed no commission of crimes by respondent since the original sentencing hearing. Counsel for respondent

made an oral motion that the court reconsider the sentence and grant probation under Penal Code section 1181. The trial court thereupon resentenced respondent, granting probation.

The trial court explained that at the time of original sentencing the law was unclear and it had presumed the cruel or unusual punishment determination would be made by the appellate court. Accordingly, it had made factual determinations regarding respondent and the crime, but had left the determination of whether a prison sentence would constitute cruel or unusual punishment for the appellate court to determine. The trial court interpreted the opinion affirming the conviction as requiring it to make that determination. The trial court reviewed its prior findings[2] and concluded that respondent "is not a dangerous person and not a person that ought to be sent to state prison for this single act under the circumstances of [his] state of mental development and personality development, that it would be

---

[2] The trial court stated: "In reviewing the file of this case, including the probation report, diagnostic study and the notes I have taken during the course of the trial, moving papers, doctors' reports, I reaffirm the conclusions that I made at the time of the original sentencing during the hearing on the motion for new trial, that the defendant is a person who is not functioning at a level I would consider normal in terms of his intellectual capacity and his capacity to deal with people.

"And I found at that time, and I find now, that that conclusion is based largely on the reports of Dr. Sharma and Dr. Maloney, and the diagnostic studies received pursuant to section 1203.03 of the Penal Code.

"The defendant has a sense of grandiosity with regards to his own self-importance, which does not conform with the reality that surrounds him.

"The doctors in the examinations seem to feel that this problem was based in part on some organicity resulting from an injury that defendant sustained in childhood. I am not prepared to make a determination as to whether or not that is so. I do note that for the record.

"Looking at the defendant's personal history and the lack of any criminal history, I am satisfied that he probably and most likely will not repeat sexual offenses of the type he has been convicted of.

"I don't believe he would be committing any crimes knowingly, and this is borne out by the opinions of Dr. Sharma, Dr. Maloney, and the examiners of the State Department of Corrections; that it is their belief that they do not believe Mr. Sandoval is criminally oriented and that he is not likely to commit future criminal offenses.

"Again, as I indicated earlier, the sexual conduct was minimal and non-physically harmful, although it may have been psychiatrically or psychologically harmful to the victim; but it wasn't an offense where the victim was caused any physical pain or abuse other than the oral copulation itself.

"I find no basis on which to find that Mr. Sandoval suffers from any mental disorders predisposing to the commission of sexual offenses and in particular pedophilia.

"The reports give a strong inference to the direction that Mr. Sandoval, despite his statements to the examiners has not really had a sexual history at all; that he is a sexually inadequate person, and whatever sexual history he gave to the examiners reflected the grandiosity of his self-impression that is not borne out by reality. It's fairly apparent in the manner in which he related his reported past sexual experience.

"The court feels and the court did feel at the time of the last sentencing, as I feel now, that Mr. Sandoval is more child-like than anything else, in terms of his relationships or his attempted relationships with others, and that no socialist [sic] purpose would be served in sending the defendant to state prison at this time."

cruel and unusual punishment within the meaning of [*People* v.]*Dillon*." It set aside its finding under Penal Code section 1203.066, subdivision (a)(9) "for that reason only" and granted probation.

■ The trial court had jurisdiction to consider an application for probation upon the filing of the remittitur, because respondent had not begun serving his sentence in state prison before he was released on bail pending appeal. (*In re Stallings* (1970) 5 Cal.App.3d 322, 329 [85 Cal.Rptr. 96].) His commitment to the Department of Corrections for diagnostic study pursuant to section 1203.03 of the Penal Code took place prior to sentencing, and was not in execution of judgment. (See *People* v. *Nicholson* (1979) 98 Cal.App.3d 617, 622 [159 Cal.Rptr. 766].)

■ The trial court was bound by the law of the case doctrine, however, to adhere to the appellate determination that the sentence was not cruel or unusual punishment. (See *People* v. *Shuey* (1975) 13 Cal.3d 835, 841 [120 Cal.Rptr. 83, 533 P.2d 211].) The determination that a sentence results in cruel or unusual punishment may be made by either the trial court or the appellate court. (See *People* v. *Williams* (1986) 180 Cal.App.3d 922, 926 [225 Cal.Rptr. 842]; *People* v. *Leigh* (1985) 168 Cal.App.3d 217, 223 [214 Cal.Rptr. 61].) Respondent fully briefed the issue to this court. The issue was before this court, and a determination adverse to respondent on the issue was necessary to this court's affirmance.

The trial court misinterpreted our opinion. That opinion does not remand to the trial court for a determination in the first instance of whether the sentence constitutes cruel or unusual punishment. (See *People* v. *Leigh*, *supra,* 168 Cal.App.3d at p. 222.) It affirms the trial court's sentence of three years in state prison.

On the return of the remittitur, the trial court resentenced respondent based upon facts before it that existed prior to respondent's appeal. Those facts were also before this court at the time of our first opinion when we rejected respondent's contention that the sentence constituted cruel or unusual punishment. The trial court had no discretion upon the return of the remittitur to determine that the sentence constituted cruel or unusual punishment based upon those facts.

The trial court also had before it a second supplemental probation report, prepared subsequent to the original sentencing hearing. That report contained no new facts, however, except the observation that respondent had been free on bail since the last sentencing hearing, on August 28, 1984, and that he continued to deny commission of the offense. Nothing contained in

that report justifies a different outcome on the issue of cruel or unusual punishment.

■ The law of the case doctrine "generally precludes multiple appellate review of the same issue in a single case." (*Searle* v. *Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 434 [212 Cal.Rptr. 466, 696 P.2d 1308].) It will not be relied on to create an injustice. (*Id.*, at p. 435.) ■ Respondent has demonstrated no "manifest misapplication of existing principles resulting in substantial injustice" which would justify departing from the doctrine. (See *People* v. *Shuey, supra,* 13 Cal.3d at p. 846.)

In light of our foregoing disposition, we do not reach appellant's remaining contentions.

Respondent's contention that to send him to prison, given the unusual postconviction history of his case, would be manifestly unfair is without merit. Respondent spent 79 days in actual custody, at the time of his arrest and during the diagnostic study, prior to his original sentencing and has spent no time in confinement on this conviction since that time. Unlike the defendants in *People* v. *Tanner* (1979) 24 Cal.3d 514, 521 [156 Cal.Rptr. 450, 596 P.2d 328], and in *People* v. *Holt* (1985) 163 Cal.App.3d 727, 734 [209 Cal.Rptr. 643], respondent has not served a jail sentence as a condition of probation. The erroneous grant of probation does not of itself preclude a subsequent prison sentence. (See *People* v. *Warner* (1978) 20 Cal.3d 678, 689 [143 Cal.Rptr. 885, 574 P.2d 1237]; *People* v. *Almodovar* (1987) 190 Cal.App.3d 732, 749 [235 Cal.Rptr. 616]; *People* v. *Gonzalez* (1979) 96 Cal.App.3d 725, 728 [158 Cal.Rptr. 205].) Under the circumstances of this case, it is not manifestly unfair to require respondent to serve the statutorily mandated minimum state prison term.

The trial court's order of September 17, 1986, is reversed. The trial court is ordered to correct the abstract of judgment to reflect the low term of three years for violation of Penal Code section 288a, subdivision (c).

Kingsley, Acting P. J., concurred.

**COLE, J.,**\* Concurring.—I also would reverse, but for reasons which differ from those of the majority. The majority places its reliance upon the law of the case. The first Sandoval opinion, quoted by the present majority, explicitly stated that the trial court was apparently aware of its power to consider whether the statutorily mandated state prison sentence might constitute cruel and unusual punishment. Based on this supposition the court, in the

---

\* Assigned by the Chairperson of the Judicial Council.

prior opinion, stated that the trial court at sentencing had determined the question of cruel and unusual punishment adversely to appellant.

Based on the events from which the current appeal has been taken, the prior appellate decision simply was mistaken. Upon the initial remand, the trial judge expressly said that at the earlier sentencing "I was not satisfied that I did have that power [to determine if a prison sentence was cruel and unusual] and then I endeavored to have the appellate court exercise that power, but it's clear from the decision in this case that the appellate court is putting the ball back into my side of the net and is telling me that it was my obligation to make that determination and make a ruling." The trial court then proceeded to find that a prison sentence was cruel and unusual in the present case.

The law of the case will be disregarded when necessary to avoid an unjust decision (*Searle* v. *Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 435 [212 Cal.Rptr. 466, 696 P.2d 1308]), so long as that exception rests on a manifest misapplication of existing principles resulting in substantial injustice. That seems to be the situation here, since the prior appellate opinion proceeded under a mistake of fact in assuming that the trial judge had, at the first sentencing, made a conscious decision that to impose a prison sentence would not be cruel or unusual.

Therefore, respondent was entitled to have the trial court determine, after the first remand, whether a prison sentence, as mandated by Penal Code section 1203.066, subdivision (a)(9), is cruel and unusual. The trial court concluded that it was, for the reasons set forth in footnote 2 of the majority opinion, *ante,* page 486. These reasons focused on the first technique set forth in *In re Lynch* (1972) 8 Cal.3d 410, 425 [105 Cal.Rptr. 217, 503 P.2d 921], for determining whether a given punishment is cruel or unusual: an examination of "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society." Had it not been for the trial court's determination, respondent would have faced the statutorily required term of three, six or eight years in prison. (Pen. Code, § 288a, subd. (c).) The first time around, the trial court sentenced respondent to the three-year low term and presumably would do the same thing again.

Nevertheless, the technique used by the trial court is but one means toward resolution of the ultimate question involved in determining whether a sentence is so disproportionate as to be regarded as constitutionally cruel or unusual. That circumstance arises, the Supreme Court teaches us, when the punishment "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch, supra,* 8 Cal.3d at p. 424.) Such can hardly be said to

be the case here. Despite the factors mentioned by the trial court, it is clear that the respondent was in a position of special trust vis-à-vis the victim; he was more than 10 years older than the victim and was his adult coach. The sentence imposed is truly a minimum prison sentence. Taking into account the credit of 118 days to which defendant is entitled and the further credits which he can earn in prison, the sentence verges on actual further incarceration of about two years (I have not attempted the exact calculation). I find nothing shocking or offensive to fundamental notions of dignity.

Therefore, I concur in reversing the judgment.

A petition for a rehearing was denied September 15, 1987, and respondent's petition for review by the Supreme Court was denied November 25, 1987. Mosk, J., was of the opinion that the petition should be granted.