Filed 1/13/23

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROBERT NASH,<br><br>Defendant and Appellant. | D079539<br><br><br><br>(Super. Ct. No. SCE371032) |

APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.  The request for judicial notice is denied.

Patrick Morgan Ford for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Christine Y. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

Convicted of three lewd acts on two young girls, defendant Robert Nash was originally sentenced to an aggregate prison term of 10 years after the trial court determined that a 15-years-to-life sentence on each count under the One Strike law (Pen. Code, § 667.61, subd. (b)) would be cruel and/or unusual punishment.[1]  Nash appealed, and we reversed, agreeing with the People that a mandatory life term was constitutional.  (*People v. Nash* (Oct. 2, 2019, D073427) [nonpub. opn.] (*Nash I*).)  Following remittitur, the trial court resentenced Nash to concurrent 15-years-to-life terms on each of the three lewd acts counts.  Nash again challenges the constitutionality of his sentence, an argument we reject based on law of the case.

The People further contend on appeal that prison terms of 15 years to life were unauthorized because section 667.61, subdivision (j)(2) of the One Strike law mandates *25 years to life* where lewd acts involved multiple victims each under the age of 14.  The courts are divided as to whether imposing a 25-years-to-life sentence under subdivision (j)(2) violates due process where, as here, the accusatory pleading only alleges a violation of subdivision (b) of section 667.61.[2]  But we need not weigh in on this conflict to decide the case before us.  Because the amended information expressly stated that the *effect* of the One Strike law allegations was potential exposure

---

[1]  Further undesignated statutory references are to the Penal Code.  One Strike sentencing law is described in section B of the discussion.

[2]  *People v. Jimenez* (2019) 35 Cal.App.5th 373, 395−397 (*Jimenez*) concluded that a 25-years-to-life sentence could not be imposed consistent with due process.  *In re Vaquera* (2019) 39 Cal.App.5th 233, 245, review granted November 26, 2019, S258376 (*Vaquera*), disagreed with *Jimenez* and upheld a 25-years-to-life sentence.  *People v. Zaldana* (2019) 43 Cal.App.5th 527, 532, review granted March 18, 2020, S259731 (*Zaldana*) followed *Vaquera*.

of 15 years to life, it did not place Nash on fair notice that he would face 25 years to life.  Rejecting the People's argument on narrow factual grounds, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

An amended information charged Nash with one lewd act (§ 288, subd. (a)) on three-year-old E.N. and two lewd acts on five-year-old K.T.  The jury convicted him as charged and found the associated One Strike law allegations under section 667.61, subdivisions (b), (c), and (e) true.   At the original sentencing, the trial court declined to impose 15-years-to-life prison terms under section 667,61, subdivision (b), concluding that such sentences would be unconstitutionally cruel or unusual.  It instead imposed a six-year term for count 1 and consecutive two-year terms for counts 2 and 3, for an aggregate prison term of 10 years.  Nash and the People appealed.

Among the arguments on appeal, the People challenged Nash's sentence as unauthorized.  They argued the trial court should have imposed 15-years-to-life prison terms that were mandated by the One Strike law (§ 667.61, subd. (b)).  We agreed in *Nash I*, explaining that 15-years-to-life prison terms would not constitute cruel and/or unusual punishment under the state and federal constitutions, and remanding for resentencing.

Following issuance of the remittitur, Nash filed a new trial motion and petitioned for writ of habeas corpus.  He claimed he received constitutionally ineffective assistance at trial and that newly discovered evidence pointed to his actual innocence.  The court denied the new trial motion, concluding it exceeded the scope of the remittitur.  It issued an order to show cause on the habeas petition on the narrow ground of ineffective assistance based on trial counsel's failure to investigate and present certain impeachment evidence.

While the habeas petition remained pending before a different judge, the court proceeded with resentencing.

The resentencing hearing took place on August 19, 2021. Nash's counsel argued that circumstances had changed since *Nash I*, with new evidence making the case "even thinner for the prosecution" and pointing to "factual innocence." He faulted Nash's trial counsel for failing to hire an investigator to challenge the credibility of Nash's ex-wife Joy, who testified for the prosecution. Acknowledging that the request was a difficult one to make in light of the prior ruling in *Nash I*, counsel nonetheless urged the court to conclude that a prison term of 15 years to life would amount to cruel and/or unusual punishment. To the extent the court rejected that argument, defense counsel asked it to run the life terms concurrently.

The court remarked that "there is nothing that the 4th DCA is ever going to say that is going to convince me that these sentences that I will be imposing are not cruel and/ . . . or unusual under both the US constitution and our state constitution." It nevertheless rejected Nash's claim that the evidence supported his factual innocence. Ultimately, "[a]t the direction of the 4th DCA," it imposed a 15-years-to-life prison term on count 1 and concurrent 15-years-to-life prison terms on counts 2 and 3.

## DISCUSSION

Appealing his sentence for a second time, Nash suggests that imposing 15-years-to-life prison terms on his lewd act convictions violates state and federal constitutional prohibitions on cruel and/or unusual punishment (U.S. Const., 8th Amend.; Cal. Const. art. I, § 17). In their respondent's brief, the People argue that Nash should be sentenced to prison terms of 25 years to life for each count under subdivision (j)(2) of section 667.61 rather than 15 years

4

to life under subdivision (b). Addressing these contentions, we reject both on our record.

A.    *The law of the case doctrine precluded a finding that a prison term of 15 years to life was cruel and/or unusual punishment.*

Nash challenges his sentence as unconstitutionally cruel and/or unusual, faulting the trial court for not considering new evidence that purportedly demonstrated his factual innocence. We find no error. Despite its continued reservations about the constitutionality of a life term, the trial court correctly concluded on remand that imposing a prison term of 15 years to life was mandated by this court's decision in *Nash I.*

" 'The doctrine of "law of the case" deals with the effect of the *first appellate decision* on the subsequent *retrial or appeal*: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.' " (*Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491 (*Morohoshi*).) "The primary purpose served by the law-of-the-case rule is one of judicial economy. Finality is attributed to an initial appellate ruling so as to avoid the further reversal and proceedings on remand that would result if the initial ruling were not adhered to in a later appellate proceeding." (*Searle v. Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 435 (*Searle*).)

At the time of resentencing, *Nash I, supra*, D073427, directed the trial court to resentence Nash under section 667.61, subdivision (b) consistent with the views expressed in our opinion. Citing *People v. Baker* (2018) 20 Cal.App.5th 711, which upheld a life term for a person convicted of orally copulating a child despite his limited criminal history, we concluded in *Nash I* that imposing prison terms of 15 years to life here under section 677.61,

5

subdivision (b) would not amount to unconstitutionally cruel and/or unusual punishment. Under the law of the case doctrine, the trial court could not reach a different conclusion. (*People v. Sandoval* (1984) 194 Cal.App.3d 481, 487 (*Sandoval*).)

Nash claims that newly discovered evidence changed the calculus at resentencing by impeaching key prosecution witnesses and demonstrating his factual innocence. He points to two pieces of impeachment evidence involving Nash's ex-wife Joy, the prosecution witness who reported the incident involving Nash's three-year-old niece E.N. A man who Joy dated after leaving Nash stated in a declaration that Joy falsely accused *him* of molesting their young daughter to secure custody. Nash likewise suggests that his trial counsel failed to interview witnesses who would have corroborated the trial testimony of a defense witness that Joy planned to leave Nash and take custody of their children. Nash separately suggests there was additional impeachment evidence as to five-year-old K.T., who testified at trial about two molestation events. He faults his trial counsel for failing to confer with a suggestibility expert "who would have explained how the second accuser would have made such allegations after learning about the first incident, and following direct and indirect allegations with her parents who were concerned with the initial allegations."[3]

_____

[3] In a similar vein, Nash seeks judicial notice of criminal proceedings against K.T.'s mother in 2018, claiming they provide "some evidence that [the child's] emotional problems may have been caused by internal family conflict." The request for judicial notice is denied. Although court records are subject to judicial notice (Evid. Code, §§ 452, subd. (d), 459), the inference Nash tries to draw from these records is entirely speculative. Nash accordingly cannot show that the court records are "both relevant to and helpful toward resolving matters before this court." (*Deveny v. Entropin* (2006) 139 Cal.App.4th 408, 418; see *People v. Babbitt* (1988) 45 Cal.3d 660, 681−682 [evidence producing only speculative inferences is *irrelevant*].) Moreover,

Although potentially relevant to his claim for habeas relief based on ineffective assistance of trial counsel, the People are correct that this "new evidence" impugning the jury's verdicts was irrelevant to the trial court's inquiry at resentencing. "Far from being a proceeding at which the trier of fact resolves the issues raised in the case, the sentencing hearing—or resentencing hearing—follows the entry of the verdict and the discharge of the jury, and constitutes the occasion on which the court pronounces the judgment *arising from the verdict*." (*Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1254.) While the sentencing court may resolve factual matters to select the appropriate sentence, it "resolves those issues in light of what occurred at trial, including its own impressions of matters such as the defendant's demeanor and conduct at trial." (*Ibid.*) Consequently, "[t]he parties at an ordinary resentencing hearing do not . . . proffer new evidence on the issues decided by the verdict, nor does the court disregard the original verdict." (*Id.* at p. 1257.)

In upholding the constitutionality of a 15-years-to-life prison term, *Nash I* highlighted the vulnerability of the young victims, Nash's abuse of a position of trust, and his status as an able-functioning adult. These same factors were present at resentencing. The trial court was therefore bound by this Court's determination in *Nash I* under the law of the case doctrine; it had no discretion to determine at resentencing that a sentence of 15 years to life amounted to cruel or unusual punishment. (*Sandoval, supra,* 194 Cal.App.3d at p. 487 [law of the case doctrine precluded trial court from finding the mandatory minimum sentence to be cruel or unusual on remand

---

these materials were not presented to the trial court in the first instance. (*People v. Guarneros* (2016) 5 Cal.App.5th 42, 51, fn. 4.)

where appellate court had found that sentence constitutional on the same facts].)

As Nash notes, the law of the case doctrine may not be applied where its application would result in an unjust decision. (*Morohoshi, supra,* 34 Cal.4th at pp. 491–492.) But this exception is a narrow one—it "must rest on 'a manifest misapplication of existing principles resulting in substantial injustice' and not mere disagreement with the prior appellate determination." (*Searle, supra,* 38 Cal.3d at p. 435; see *People v. Stanley* (1995) 10 Cal.4th 764, 787.) Nash fails to demonstrate that applying the doctrine here would result in an *unjust* decision. His argument rests on accepting his claim of factual innocence, which is not a sentencing court's role.

B.   *Where the accusatory pleading expressly states that the "effect" of a sentencing allegation exposes the defendant to 15 years to life in prison, due process does not permit a sentence of 25 years to life.*

In their respondent's brief, the People assert for the first time that the 15-years-to-life sentence (the one they sought in *Nash I* and at resentencing) is unauthorized. They urge this Court to impose prison terms of 25 years to life under section (j)(2) of section 667.61 because E.N. and K.T. were both under 14 years of age.[4] As we explain, we reject this argument because the accusatory pleading did not give Nash fair notice that he faced exposure of 25 years to life on any lewd act count.

The One Strike law in section 667.61 " 'mandates an indeterminate sentence of 15 or 25 years to life in prison when the jury has convicted the

---

[4]   Although the trial court would have discretion whether to impose the life terms consecutively or concurrently (see § 667.61, subd. (i); *People v. Lopez* (2022) 76 Cal.App.4th 287, 292), the People agree that the case history leaves no doubt the trial court would choose to impose concurrent sentences. Accordingly, they request us to order the 25-years-to-life prison terms to run concurrently.

8

defendant of a specified felony sex crime [citation] and has also found certain factual allegations to be true.' " (*People v. Carbajal* (2013) 56 Cal.4th 521, 534.) "Except as provided in subdivision (a), (j), (*l*), or (m), a person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for 15 years to life." (§ 667.61, subd. (b).) A lewd act (§ 288, subd. (a)) is a qualifying offense under subdivision (c)(8) of section 667.61. One of the circumstances specified in subdivision (e) is that the defendant is convicted of committing a lewd act against more than one victim. (§ 667.61, subd. (e)(4).) Thus, a defendant convicted of lewd acts against two victims must be imprisoned for 15 years to life. (*Id.*, subds. (b), (c)(8), (e)(4).)

Section 667.61, subdivision (b) contains a carveout, however, for circumstances that subject a defendant to a greater mandatory prison term of 25 years to life. One of those is specified in subdivision (j)(2) and applies to "[a] person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e), upon a victim who is a child under 14 years of age." Put together, a defendant convicted of lewd acts against two victims, each under the age of 14, faces exposure of 25 years to life on each count under the One Strike law.

Due process requires that a defendant be given "fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes." (*People v. Mancebo* (2002) 27 Cal.4th 735, 747 (*Mancebo*).) This bedrock rule is reflected in various statutes. Section 1170.1, subdivision (e) requires all sentence enhancements to be alleged in the accusatory pleading and either admitted by the defendant in open court or found true by the trier of fact. (See *People v. Anderson* (2020) 9 Cal.5th

9

946, 953 (*Anderson*).) Likewise, subdivision (*o*) of section 667.61 permits imposition of a life prison term for qualifying sex offenses "only if the existence of any circumstance specified in subdivision (d) or (e) is alleged in the accusatory pleading pursuant to this section, and is either admitted by the defendant in open court or found to be true by the trier of fact."[5]

The question before us is whether the accusatory pleading in this case gave Nash fair notice that he faced exposure of 25 years to life on each count under the One Strike law. (*Anderson, supra,* 9 Cal.5th at p. 953.) "Neither the relevant statutes nor the due process clause requires rigid code pleading or the incantation of magic words. But the accusatory pleading must adequately inform the defendant as to how the prosecution will seek to exercise its discretion." (*Id.* at p. 957.) The "statutory pleading requirements of [section 667.61, subdivision (*o*)] and section 1170.1(e), read against the backdrop of due process, require more than simply alleging the facts supporting an enhancement somewhere in the information." (*Anderson,* at p. 956.)

There is a split of authority as to whether an accusatory pleading that alleges only a subdivision (b) enhancement under section 667.61 puts a defendant on adequate notice for a subdivision (j)(2) enhancement to be imposed. The Court of Appeal for the Sixth Appellate District held that imposing a 25-years-to-life prison term under section 667.61, subdivision (j)(2) would violate due process where the information only put the defendant

_____

[5] This language predates the addition of subdivision (j)(2), which was added to section 667.61 in 2010. (Stats. 2010, ch. 219, § 16 (Assem. Bill No. 1844), effect. Sept. 9, 2010.) Thus, while the One Strike law confers express pleading and proof requirements for the multiple victim circumstance in subdivision (e)(4) of the statute, no similar requirements are imposed *in that statute* as to the under-age-14 circumstance in section 667.61, subdivision (j)(2). Those requirements are instead found under section 1170.1.

on notice that he faced a 15-years-to-life prison term under subdivision (b). (*Jimenez, supra,* 35 Cal.App.5th at p. 397.)  Citing *Mancebo, supra,* 27 Cal.4th 735, the *Jimenez* court commented that notice serves a practical value as well, with potential exposure informing a defendant's decision to plea bargain or go to trial.

Division Three of the Fourth Appellate District and Division Eight of the Second Appellate District have since disagreed with *Jimenez.*  (See *Vaquera, supra,* 39 Cal.App.5th 233, review granted; *Zaldana, supra,* 43 Cal.App.5th at p. 532, review granted.)[6]  *Vaquera* distinguished *Mancebo* on the basis that the multiple victim allegation *had* been pleaded as statutorily required, unlike in *Mancebo.*  (*Vaquera,* at p. 244; see § 667.61 (*o*).)  And *Vaquera* and *Zaldana* both faulted *Jimenez* for ignoring the cross-reference to subdivision (j) found within the introductory clause of subdivision (b) of section 667.61.  Because subdivision (b) provides for a 15-years-to-life sentence *except as provided* in subdivision (j), and subdivision (j)(2) mandates a prison term of 25 years to life for qualifying sex crimes with multiple victims under the age of 14, *Vaquera* and *Zaldana* reasoned that a defendant receives fair notice even if the accusatory pleading solely references section 667.61, subdivisions (b) and (e).  (*Vaquera,* at pp. 240−242, 244; *Zaldana,* at p. 535.)

The People urge us to follow *Zaldana* and *Vaquera* and reject *Jimenez* as wrongly decided.  Nash, for his part, urges us to reject the People's belated argument wholesale under the doctrine of judicial estoppel.  Ultimately, we

---

6  The Supreme Court granted review on the following issues:  "(1) Did the Court of Appeal err by disagreeing with [*Jimenez, supra,* 35 Cal.App.5th 373] and endorsing as mandatory the sentencing practice prohibited in that case; (2) Is the Court of Appeal's decision incorrect under *People v. Mancebo* (2002) 27 Cal.4th 735; [and] (3) Did the Court of Appeal err by failing to address petitioner's claims as to the issues of waiver and estoppel?"

need not take a side in the *Jimenez/Vaquera/ Zaldana* conflict to resolve the matter.  Based on the specific text contained in the accusatory pleading here, Nash was not on fair notice that he faced exposure of 25 years to life.

The amended information included a charge summary on its first page. Beside each lewd act count, "Special Allegations" referenced One Strike allegations under "PC667.61(b)(c)(e)."  The next column specified the corresponding "Allegation Effect," listing potential exposure of "15 Yrs-Life."

**CHARGE SUMMARY**

| Count | Charge | Issue Type | Sentence Range | Special Allegations | Allegation Effect |
|---|---|---|---|---|---|
| 1 | PC288(a) | Felony | 3-6-8 | | |
| | NASH, ROBERT CHRISTOPHE | | | PC667.61(b)(c)(e) | 15 Yrs-Life |
| 2 | PC288(a) | Felony | 3-6-8 | | |
| | NASH, ROBERT CHRISTOPHE | | | PC1203.066(a)(8) | No Probation |
| | | | | PC667.61(b)(c)(e) | 15 Yrs-Life |
| 3 | PC288(a) | Felony | 3-6-8 | | |
| | NASH, ROBERT CHRISTOPHE | | | PC667.61(b)(c)(e) | 15 Yrs-Life |

Under each count, the amended information specified that Nash had committed a qualifying sex offense against more than one victim "within the meaning of PENAL CODE SECTION 667.61(b)(c)(e)."  Nowhere did the pleading reference subdivision (j)(2) of section 667.61, although it provided the ages of the two alleged victims.

*Vaquera* and *Zaldana* suggest that the cross-reference to subdivision (j) contained in subdivision (b) of section 667.61 places a defendant on fair notice of potential exposure of 25 years to life.  But neither case suggests that where an accusatory pleading *expressly specifies* potential exposure of 15 years to life, a defendant is nevertheless on fair notice by virtue of the statutory cross-reference that he or she might face a prison term of 25 years to life.[7] Because principles of due process do not permit the prosecution to mislead a

_____

[7]     The People's brief acknowledges this factual distinction without grappling with its legal significance.

12

defendant as to potential exposure, we conclude on our record that sentencing Nash to 25 years to life under section 667.61, subdivision (j)(2) would not comport with due process.

Our conclusion finds support in *Anderson.* Defendant Vernon Anderson was convicted as charged of murder and five robberies at a San Francisco house party. (*Anderson, supra,* 9 Cal.5th at p. 950.) The accusatory pleading alleged a firearm enhancement associated with each count. As to the murder count, the information alleged a 25-years-to-life vicarious firearm discharge enhancement under section 12022.53, subdivisions (d) and (e). Lesser personal use enhancements were alleged for each of the five robbery counts ranging from three to 10 years. (§§ 12022.53, subd. (b), 12022.5, subd. (a).) At sentencing the court imposed a 25-years-to-life enhancement on each robbery count. (*Anderson*, at p. 952.) This, the Supreme Court held, violated statutory pleading requirements and "the due process principles underlying those requirements." (*Id.* at p. 955.) As the court explained, "[a] pleading that alleges an enhancement as to one count does not provide fair notice that the same enhancement might be imposed as to a different count." (*Id.* at p. 956.)

*People v. Haro* (2021) 68 Cal.App.5th 776 (*Haro*) is also instructive. Defendant Alicia Haro was convicted as charged of trafficking methamphetamine during two trips across the United States-Mexico border. She transported 19.5 kilograms on her first trip, and 17.5 kilograms on her second trip. (*Id.* at pp. 779–780.) The amended information alleged two separate conspiracies. Attached to each count was the allegation that Haro transported more than 10 kilograms of methamphetamine, adding 10 years to her prison term. (Health & Saf. Code, § 11370.4, subd. (b)(3); see *Haro*, at pp. 783–784.) At sentencing the court struck one conspiracy conviction based

13

on the jury's finding that Haro engaged in a single drug trafficking conspiracy, not two. But it merged the 10-kilogram enhancement associated with that count with the 10-kilogram enhancement associated with the other conspiracy count, as multiple events in a single conspiracy. (*Haro*, at pp. 784, 785.) It accordingly applied the greater 15-year enhancement under subdivision (b)(4) of Health and Safety Code section 11370.4 that applies to the transportation of more than 20 kilograms of methamphetamine. (*Haro*, at pp. 784, 785.)

Evaluating this outcome under *Mancebo* and *Anderson*, this court concluded that imposing a 15-year enhancement violated due process. "Even though the accusatory pleading includes the allegation of facts from which, if found true, one could conclude that more than 20 kilograms of methamphetamine were at issue in the offenses for which Haro was charged, the pleading itself did not provide Haro with fair notice that the People intended to exercise their discretion to pursue a sentencing enhancement based on a conspiracy to transport more than 20 kilograms of methamphetamine." (*Haro, supra,* 68 Cal.App.5th at pp. 788–789.) Quoting *Anderson*, we emphasized that the purpose of statutory pleading requirements was to give a defendant sufficient notice to permit informed decisions about defense strategy. (*Haro,* at p. 790, citing *Anderson, supra,* 9 Cal.5th at p. 964.)

There are several differences between the firearm and drug weight enhancements at issue in *Anderson* and *Haro* and the One Strike law provisions at issue here. But we draw from those cases a more general principle that we must look at the specific language in the operative accusatory pleading to assess whether it placed the defendant on fair notice of the exposure sought by the prosecution. Applying this principle, we

14

conclude that where a pleading explicitly recites an exposure of 15 years to life as the sentencing effect of allegations under subdivisions (b), (c), and (e) of section 667.61, it does not put a defendant on fair notice that he might face exposure of 25 years to life under subdivision (j)(2), even if the pleading alleges facts that would support the 25-years-to-life sentence if found true. Accordingly, we reject the People's request to strike the concurrent 15-years-to-life sentences imposed by the trial court on counts 1, 2, and 3 and impose concurrent prison terms of 25 years to life on those counts.

## DISPOSITION

The judgment is affirmed.

DATO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

15