[No. C036854. Third Dist. Oct. 27, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
DELBERT MEEKS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and V.

## Counsel

Robert Wayne Gehring, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, John G. McLean, Joel Carey and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**HULL, J.**—A jury convicted defendant Delbert Meeks of willfully failing, between January 1 and May 15, 2000, to register within five days after changing his address (Pen. Code, § 290, subd. (a)(1)(A); unspecified section references that follow are to the Penal Code) and willfully failing, between

December 1, 1999, and May 15, 2000, to register within five days of his birthday (§ 290, subd. (a)(1)(D)). After a bench trial, the court found that defendant had been convicted on four previous occasions of offenses that constituted strikes within the meaning of section 667, subds. (b)–(i), and section 1170.12. Defendant was sentenced to state prison for 25 years to life for failure to register after changing his address. For purposes of sentencing, the court struck the prior convictions as they related to his failure to register within five days of his birthday and imposed a consecutive term of two years.

On appeal, defendant contends that (1) the court erred in instructing the jury on the element of "willfulness," (2) the court erred in denying his challenges to multiple counts for the single continuing offense of failure to register, (3) the court violated section 654 when it did not stay punishment on his conviction for failure to register within five days of his birthday, and (4) imposition of a term of 25 years to life constitutes cruel and unusual punishment.

In an earlier published opinion, we rejected all of defendant's contentions and affirmed. Among other things, we concluded defendant was properly convicted and sentenced for multiple violations of Penal Code section 290. The Supreme Court thereafter granted defendant's petition for review and transferred the matter back to this court for reconsideration in light of *People v. Britt* (2004) 32 Cal.4th 944 [12 Cal.Rptr.3d 66, 87 P.3d 812] (*Britt*). Upon reconsideration, we again affirm the judgment.

FACTS

Defendant was born December 3, 1951. At trial, he stipulated that he was required to register under section 290 based on a felony conviction. Under the provisions of section 290, defendant had a lifelong requirement to register within five days of his birthday and within five days of changing his address. Defendant registered at least nine times from 1982 through 1997; however, the last time he registered was December 15, 1997. He then listed his address as 2557 Rio Linda Boulevard, Sacramento.

Sometime in 1998, defendant was evicted from his Rio Linda residence and moved to 4720 Roosevelt Avenue in Sacramento. In January 1999, defendant was evicted from the Roosevelt Avenue residence after he failed to

pay the rent. On April 15, 1999, an officer detained defendant, and he told the officer he was staying at 4720 Roosevelt Avenue. Defendant also told the officer that he knew he had to register this address pursuant to section 290.

After defendant was evicted from the Roosevelt Avenue residence, he spent time living on the street. In February or March 2000, he moved in with Naomi Jefferson, his sister-in-law, at 3540 Y Street in Sacramento, where he lived for several months. Defendant was detained by an officer on May 4, 2000, and gave 4720 Roosevelt Avenue as his address. When defendant was arrested on May 15, 2000, at Jefferson's residence, he gave Jefferson's address as his residence.

Defendant testified that he had been convicted of an offense in 1982 that required him to register under section 290 for life. Defendant believed he had registered somewhere around 12 or 13 times. In 1996 he was diagnosed HIV positive; thereafter, knowing he was going to die, he did not "[c]are about nothing." He also worried that his youngest daughter had contracted HIV from either himself or her mother. As to what he meant when he said he did not care about anything, defendant explained: "I didn't think about nothing else except for the disease. I didn't think about registering. I didn't think about paying bills. I didn't think about doing none of that. I thought about it, but I couldn't deal with it." In 1997 his lack of caring was exacerbated when he was diagnosed with hepatitis C.

From 1995 through 1998, defendant participated in a methadone treatment program in an effort to overcome his addiction to heroin. He went to the clinic "[e]very morning." Although defendant had a bus pass, which he used to get to the clinic, he did not go to the courthouse and register because he was "too depressed." On cross-examination, when asked if it "occurred to him that [he] had to register pursuant to Penal Code Section 290," the following dialogue occurred: "A. I didn't think about it. [¶] Q. You didn't think about it? [¶] A. No. I had priorities. Maybe my priorities could have been better, but they weren't. [¶] Q. But you were aware that you were required to register based on your 1997 registration, correct? [¶] A. Yes."

DISCUSSION

I*

*The Instructions on Willfulness*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 695.

## II

### *Multiple Offenses*

Defendant contends that his conviction for failing to register within five days of his birthday should be struck because section 290's registration requirements are continuing offenses. He argues: "Once a registrant has willfully failed in the legal duty to update that registration upon birthday or change of address, that state of law violation continues until terminated by some significant event, registration, arrest, death, etc. While a former registrant is in that state of willful failure to comply, the passage of other events requiring registration cannot be new offenses because the existing violation had not yet been completed. That a second birthday passes or another change of residence occurs is not a new offense, but merely a continuation of the state of unlawfulness." We are not persuaded.

■ Failure to register under section 290 is a continuing offense (§ 290, subd. (g)(8); *Wright v. Superior Court* (1997) 15 Cal.4th 521, 528 [63 Cal.Rptr.2d 322, 936 P.2d 101]), that is, one "marked by a continuing duty in the defendant to do an act which he fails to do. The offense continues as long as the duty persists and there is a failure to perform that duty." (*Id.* at p. 525.) But simply because the Legislature intended that a violation of section 290 be a continuing offense does not mean that a defendant cannot be convicted and punished for new and separate violations of section 290 as he continues to ignore the law.

" 'The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.]' [Citations.] Plainly, the Legislature perceives that sex offenders pose a 'continuing threat to society' [citation] and require constant vigilance." (*Wright v. Superior Court, supra,* 15 Cal.4th at p. 527.)

■ The Legislature has found it imperative for the safety of society that the location of sex offenders be known to law enforcement at all times, thus requiring defendants subject to section 290 to reregister annually and upon a change of location serves that purpose by providing law enforcement with updated information through which it may track these defendants. It would ill serve the purpose of section 290 to provide defendants who fail to register with blanket immunity from prosecution for all but a single failure to register. A defendant who knows that he is subject to prosecution for each violation of the registration requirement is more likely to comply in order to avoid additional punishment and is more likely to become visible again to law

enforcement. Thus visible, he arguably is less likely to repeat his sexual crimes. By requiring defendants to register annually and with every change of residence, it was no doubt the Legislature's intent to treat each violation of the registration requirements as a separate, continuing offense in order to encourage compliance with the law and to ensure to the extent possible that a sex offender's whereabouts remain known.

Defendant's reliance on *People v. Lewis* (1978) 77 Cal.App.3d 455 [143 Cal.Rptr. 587], is misplaced. In *Lewis,* the defendant was charged with four separate counts of pimping in violation of section 266h, all of which related to the same woman over a period of time. In *Lewis,* the court noted that the statute at issue described a continuing offense and one that anticipated activity over a period of time. The court noted that the gravamen of the offense was a course of conduct of living or deriving support and maintenance from the earnings of a prostitute. (*People v. Lewis, supra,* at p. 462.) Under those circumstances, the defendant could not be charged with separate acts of pimping each time he received money from the prostitute with whom he was involved.

■ Under section 290, a failure to register when one moves to a different residence is a continuing offense; a failure to register on the event of the defendant's birthday is a separate continuing offense. Unlike *Lewis,* where a single continuing offense was parsed into separate and discrete offenses, in this matter there are two separate offenses, the statute was violated in two different ways. Had the prosecution charged a separate offense for each day of defendant's failure to register when he changed his address, the defendant would then have been subjected improperly to multiple convictions for a single criminal act. Here however he was subjected to multiple convictions for multiple criminal acts.

Defendant's separate convictions for failure to register upon a change of address and to register annually on his birthday are lawful. (See *People v. Davis* (2002) 102 Cal.App.4th 377 [125 Cal.Rptr.2d 519].)

### III

*Section 654*

Defendant contends that sentencing him for failing to register after changing his address and failing to register following his birthday violated section 654 because "the two counts for which [he] was found guilty . . . were merely subdivisions of a single, continuing offense." We disagree.

■ Section 654 reads: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that

provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." Although section 654 speaks in terms of an "act or omission," it has been judicially interpreted to include situations in which several offenses are committed during a course of conduct deemed indivisible in time. (*People v. Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905].) The key inquiry is whether the objective and intent attending more than one crime committed during a continuous course of conduct was the same. (*People v. Brown* (1991) 234 Cal.App.3d 918, 933 [285 Cal.Rptr. 824].) "[I]f all of the offenses were merely incident to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.] [¶] If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*People v. Harrison* (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401, 768 P.2d 1078].)

Defendant contends the two offenses for which he was sentenced, failure to register following a change of address and failure to register following his birthday, "are for largely coterminous time periods" and for the same objective of avoiding police surveillance. Thus, he argues, section 654 permits punishment for only one of the offenses.

■ In *Britt, supra*, 32 Cal.4th 944, the defendant was subject to the registration requirement of section 290 and moved from Sacramento County to El Dorado County without notifying either jurisdiction. (*Britt, supra*, at p. 949.) Section 290, subdivision (f)(1), requires notification in the jurisdiction where the person last registered, and section 290, subdivision (a)(1)(A), requires registration in the jurisdiction to which the person moves. The state high court concluded that because both offenses were committed for the single purpose of avoiding police surveillance, the defendant could be punished for only one of those crimes. (*Britt, supra*, at p. 954.)

The present matter is readily distinguishable from *Britt*. In *Britt*, the defendant committed one act, moving from Sacramento County to El Dorado County, which triggered two registration requirement. In order to accomplish the defendant's objective of avoiding police surveillance, it was necessary that he fail to register in both jurisdictions. Failing to register in Sacramento County, but registering in El Dorado County, would have accomplished nothing. El Dorado County would have been alerted to his whereabouts. Likewise, registering in Sacramento County alone would have triggered that

county to notify El Dorado County. Thus, it was necessary that the defendant fail to fulfill both requirements to meet his ultimate objective. (*Britt, supra,* 32 Cal.4th at p. 953.)

■ In the present matter, defendant's birthday was December 3, and the last time he registered was December 15, 1997. Section 290, subdivision (a)(1)(D), requires registration within five days of the person's birthday. Defendant became in violation of this provision after December 8, 1998. In his December 1997 registration, defendant listed his address as 2557 Rio Linda Boulevard in Sacramento. Sometime in 1998, defendant was evicted from that residence and moved to 4720 Roosevelt Avenue. More than five days after that move, defendant became in violation of section 290, subdivision (a)(1)(A), which requires registration within five days of a change of residence. Although conceivably the triggering events of defendant's two registration requirements could have come on the same day, if defendant was evicted on his birthday, the triggering events were nevertheless distinct. Furthermore, in January 1999, defendant was evicted from the Roosevelt Avenue residence and later moved into 3540 Y Street with his sister-in-law. Again he failed to register.

Defendant argues the present matter is analogous to *Britt.* In *Britt,* registration in either Sacramento or El Dorado County would have revealed the defendant's presence in El Dorado County for purposes of police surveillance. Likewise, according to defendant, compliance with either registration requirement here, during the "largely coterminous time periods" following defendant's birthday and his moves "would have revealed his presence" at the new address.

■ Defendant's analogy proves too much. Once a triggering event occurs, the offense of failing to register is continuing in nature. Failure to register within five days of defendant's birthday occurred after December 8, 1998, and again after December 8, 1999, and every year thereafter. Although the periods for each of these offenses overlap somewhat and the objective of each is the same, it cannot reasonably be argued that defendant can be punished only once for each successive failure to register. Similarly, every time defendant moves, this triggers a new registration requirement, each of which continues indefinitely and overlaps with the one before it. However, each is a separate offense.

"[T]he purpose of section 654 'is to insure that a defendant's punishment will be commensurate with his culpability.'" (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211 [23 Cal.Rptr.2d 144, 858 P.2d 611].) Under the circumstances of this case, failure to punish defendant for each failure to register would violate this purpose. A defendant who repeatedly moves without

notifying authorities, or repeatedly allows a birthday to pass without registering, is surely more culpable than one who fails to register following only one triggering event. Section 654 does not prohibit the multiple punishments imposed in this case.

Having so concluded, we need not consider defendant's argument that remand for the trial court to determine the objective underlying each offense violates double jeopardy principles. This is not a case of a single act or course of conduct that results in multiple offenses. This matter involves separate triggering events giving rise to separate offenses. Thus, there is no occasion for the trial court to make a factual determination of objective. We also need not consider defendant's argument that the matter be remanded for the trial court to exercise its discretion whether to dismiss prior conviction allegations. The court has already exercised its discretion in this regard.

## IV

### Cruel and/or Unusual Punishment

As noted above, defendant was sentenced under the three strikes law to a term of 25 years to life for failing to register within five days of changing his address. The court struck the prior convictions for purposes of sentencing on the count alleging a failure to register within five days of his birthday, and imposed a two-year term, resulting in a total term of 27 years to life.

Defendant contends that his sentence of 25 years to life for failing to register after changing his address constitutes cruel and/or unusual punishment under the United States and California Constitutions. We disagree.

■ Defendant raised this argument in a superficial way at trial, but provided no specifics. Even so, both the trial and the appellate court have the authority to determine whether a sentence results in cruel or unusual punishment. (*People v. Sandoval* (1987) 194 Cal.App.3d 481, 487 [239 Cal.Rptr. 544]; *People v. Williams* (1986) 180 Cal.App.3d 922, 926 [225 Cal.Rptr. 842].) While the proper determination of this claim may be fact-specific (*People v. Dillon* (1983) 34 Cal.3d 441, 479 [194 Cal.Rptr. 390, 668 P.2d 697]), it is a role of the appellate court to decide mixed questions of fact and law (*People v. Cromer* (2001) 24 Cal.4th 889, 900–901 [103 Cal.Rptr.2d 23, 15 P.3d 243]; *People v. Louis* (1986) 42 Cal.3d 969, 984 [232 Cal.Rptr. 110, 728 P.2d 180] [determining mixed questions of fact and law]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 318–319, pp. 357–359.)

"Mixed questions are those 'in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts

satisfy the [relevant legal] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.' " (*People v. Louis, supra,* 42 Cal.3d at p. 984, quoting *Pullman-Standard v. Swint* (1982) 456 U.S. 273, 289, fn. 19 [72 L.Ed.2d 66, 80, 102 S.Ct. 1781].) Moreover, the People have addressed the argument.

■ We review these questions independently. (*People v. Cromer, supra,* 24 Cal.4th at p. 901; *People v. Louis, supra,* 42 Cal.3d at p. 984.)

■ Under the separation of powers doctrine, the courts may not encroach lightly in matters that are normally left to the Legislature and must always be aware that one function of the legislative branch of government is to define crimes and describe punishments. (*In re Foss* (1974) 10 Cal.3d 910, 917 [112 Cal.Rptr. 649, 519 P.2d 1073].) The courts examine legislative acts to determine whether the punishment exceeds constitutional limits in individual cases. (*Ibid.*; *In re Lynch* (1972) 8 Cal.3d 410, 414 [105 Cal.Rptr. 217, 503 P.2d 921].)

■ The Eighth Amendment to the United States Constitution proscribes "cruel *and* unusual punishment" and "contains a 'narrow proportionality principle' that 'applies to noncapital sentences.' " (*Ewing v. California* (2003) 538 U.S. 11, 20 [155 L.Ed.2d 108, 117, 123 S.Ct. 1179] (lead opn. of O'Connor, J.), quoting *Harmelin v. Michigan* (1991) 501 U.S. 957, 996–997 [115 L.Ed.2d 836, 111 S.Ct. 2680].) That principle prohibits " 'imposition of a sentence that is grossly disproportionate to the severity of the crime' " (*Ewing v. California, supra,* 538 U.S. at p. 21 [155 L.Ed.2d at p. 117] (lead opn. of O'Connor, J.), quoting *Rummel v. Estelle* (1980) 445 U.S. 263, 271 [63 L.Ed.2d 382, 389, 100 S.Ct. 1133]), although in a noncapital case, successful proportionality challenges are " 'exceedingly rare.' " (*Ibid.*)

■ A proportionality analysis requires consideration of three objective criteria, which include "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentence imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." (*Solem v. Helm* (1983) 463 U.S. 277, 292 [77 L.Ed.2d 637, 650, 103 S.Ct. 3001].) But it is only in the rare case where a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality that the second and third criteria come into play. (*Harmelin v. Michigan, supra,* 501 U.S. at p. 1005 [115 L.Ed.2d at pp. 871–872] (conc. opn. of Kennedy, J.).)

In *Ewing v. California, supra,* 538 U.S. 11 [155 L.Ed.2d 108], the United States Supreme Court's most recent case involving a claim of cruel and unusual punishment, the high court upheld a three strikes prison term of 25

years to life after the defendant committed grand theft by shoplifting three golf clubs, having been convicted previously of four serious or violent felonies. (*Id.* at pp. 17–20 [155 L.Ed.2d at pp. 115–117.)

Justice O'Connor stated in her lead opinion that "[r]ecidivism has long been recognized as a legitimate basis for increased punishment." (*Ewing v. California, supra,* 538 U.S. at p. 25 [155 L.Ed.2d at p. 120].) In considering the gravity of the offense, the Supreme Court looked not only to Ewing's current felony, but also to his long criminal felony history, stating "[a]ny other approach would fail to accord proper deference to the policy that judgments find expression in the legislature's choice of sanctions. In imposing a three strikes sentence, the State's interest is not merely punishing the offense of conviction . . . '[i]t is in addition the interest . . . in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.' " (*Id.* at p. 29 [155 L.Ed.2d at p. 122], quoting *Rummel v. Estelle, supra,* 44 U.S. at p. 276 [63 L.Ed.2d at p. 392].)

■ Applying the proportionality test in light of *Ewing,* we conclude that defendant's sentence of 25 years to life in prison for failing to register cannot be considered a sentence that is grossly disproportionate to his crime in light of his long and serious criminal history.

First, his sentence is the same as the one imposed in *Ewing.* He has violated a law that is intended to avoid, or at least minimize, the danger to public safety posed by those who have been convicted of certain sexual offenses. It is at least as serious as theft of three golf clubs.

In addition to the instant two felony convictions, defendant's prior convictions and sentences were as follows: convicted in Missouri in 1969 of burglary and received a state prison term; convicted in Los Angeles County in 1973 for possession of material for arson and was granted probation, but probation was later revoked and he was sentenced to state prison for six months to five years; convictions in Sacramento County in 1975 for rape, second degree robbery and assault with a deadly weapon for which he received life sentences; convicted in Sacramento County in 1982 for attempted rape by force and sentenced to state prison for four years, and, when paroled, he violated his parole and was returned to custody; convicted in Santa Clara County in 1987 of felony possession of drugs and two misdemeanors for which he was sentenced to state prison for two years; convicted in Sacramento County in 1989 of second degree burglary and sentenced to state prison for two years; convicted in Sacramento county in 1991 of second degree robbery with an enhancement for service of a prior prison term and sentenced to four years in state prison; and convicted in Sacramento County in 1993 of misdemeanor driving under the influence and granted probation.

Taking into account, as we should, not only the seriousness of defendant's current offense, but also his history of repeated violations of the criminal law that spanned at least 30 years, we cannot say that his sentence is grossly disproportionate to his current offense when viewed in light of his long-standing, and sometimes violent, criminal history. The sentence does not constitute cruel and unusual punishment.

The California Constitution prohibits "cruel *or* unusual punishment." (Cal. Const., art. I, § 17, italics added.) A punishment may violate the California Constitution "although not cruel or unusual in its method, [if] it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch, supra,* 8 Cal.3d at 424.)

The court in *In re Lynch* spoke of three "techniques" the courts have used to administer this rule, (1) an examination of the "nature of the offense and/or the offender, with particular regard to the degree of danger both present to society" (*In re Lynch, supra,* 8 Cal.3d at p. 425), (2) a comparison of the challenged penalty with the punishments prescribed for more serious offenses in the same jurisdiction (*id.* at p. 426), and (3) "a comparison of the challenged penalty with the punishments prescribed for the same offense in other jurisdictions having an identical or similar constitutional provision" (*id.* at p. 427, italics omitted). As under the federal standard, a defendant's history of recidivism, which is part of the nature of the offense and the offender, justifies harsh punishment. (*People v. Cooper* (1996) 43 Cal.App.4th 815, 823–824 [51 Cal.Rptr.2d 106]; *People v. Weaver* (1984) 161 Cal.App.3d 119, 125–126 [207 Cal.Rptr. 419].)

Defendant minimizes the severity of his current offenses for failing to register, referring to them as "de minimis as felonies go." We do not share that view.

As noted earlier, California has recognized, and reasonably so, that sex offenders present a serious danger to society because of their tendency to repeat their sexual offenses. Sexual offenses not only invade the deepest privacies of a human being, and thereby may cause permanent emotional scarring, but they frequently result in serious physical harm to, or death of, the victim. Hence, " 'it is necessary to provide for continued registration' to effectuate the statutory purpose of protecting the safety and general welfare of the public." (*Wright v. Superior Court, supra,* 15 Cal.4th at p. 529.) Defendant's willingness to ignore his duty to register and thus ignore society's right to maintain some control over sexual offenders may seem "de minimis" to him but does not seem so to a society seeking to protect itself from sexual predators. Defendant's history of prior convictions for rape and attempted

rape, approximately seven years apart, shows that he is one of those persons who law enforcement needs to have "readily available for police surveillance at all times." Here, defendant, without legal excuse or justification, admitted having failed to register after 1997 because he had other "priorities." We see nothing "de minimis" either in the offenses in the abstract or in the circumstances attending their commission.

Similarly, in considering the nature of the offender, we have already outlined the highlights of his criminal record, which demonstrates that he has been guilty of violent sexual conduct and other violent conduct and has dedicated himself to a life of crime from the age of 18 in 1969 when he was convicted of burglary through age 46 in 1997 when he was convicted of possession of controlled substance paraphernalia.

Regarding the second *In re Lynch* "technique," comparing defendant's penalty with the punishments prescribed for different offenses in California, defendant concedes that "all three strikes defendants with a current conviction will receive the same sentence without regard to the current felony." Defendant thus recognizes that his sentence is no more severe than that of any other defendant in California with a similar criminal history who is convicted of a felony.

Finally, regarding the third *In re Lynch* "technique," defendant presents a survey of registration requirements across the country. While it is fair to say that the various states treat the issue of registration of sexual offenders in widely diverse ways, defendant concedes that seven states treat a failure to register as felonies carrying penalties of from one to 12 years, depending on their recidivism statutes, one (Texas) would assess a term of life or a term of 25 to 99 years and one (Mississippi) would sentence an offender such as defendant to life without parole. Even if it could be said that defendant's penalty "exceed[s] the punishments decreed for the offense in a significant number of [other jurisdictions] . . ." (*In re Lynch, supra,* 8 Cal.3d at p. 427), this is but one measure of excessiveness. And viewed against the backdrop of the other two *In re Lynch* considerations, a comparison of the laws in other states is not so significant that it demands a finding of excessiveness in this instance.

On this record, defendant's sentence does not shock the conscience or offend fundamental notions of human dignity. It does not violate California's Constitution.

V*

*The Trial Court's Ruling Regarding Prior Convictions*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Morrison, J., concurred.

**SIMS, Acting P. J.,** Concurring and Dissenting.—I concur in parts I, II, and III of the majority opinion.

I respectfully dissent from the majority's conclusion, in part IV, that the sentence in this case does not constitute cruel or unusual punishment. In my view, defendant's sentence of 25 years to life on count 2, plus a two-year consecutive sentence on count 3, constitutes cruel or unusual punishment under the California Constitution.

Article 1, section 17 of the California Constitution provides in pertinent part, "Cruel or unusual punishment may not be inflicted . . . ."

Construing this provision, the California Supreme Court in *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], said, "the power to prescribe penalties [must] ' "be exercised within the limits of civilized standards." ' [Citations.] 'The State, even as it punishes, must treat its members with respect for their intrinsic worth as human beings.' [Citations.] Punishment which is so excessive as to transgress those limits and deny that worth cannot be tolerated. [¶] We conclude that in California a punishment may violate article 1, section 6 [now section 17] of the Constitution if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*Id.* at p. 424, fn. omitted.)[1]

---

*See footnote, *ante*, page 695.

[1] Article I, section 24 of the California Constitution was amended by Proposition 115 in 1990 to provide in part: "In criminal cases the rights of a defendant to . . . not suffer the imposition of cruel or unusual punishment, shall be construed by the courts in this state in a manner consistent with the Constitution of the United States." In *Raven v. Deukmejian* (1990) 52 Cal.3d 336 [276 Cal.Rptr. 326, 801 P.2d 1077], in an opinion by Chief Justice Lucas, the Supreme Court concluded that this portion of Proposition 115 "contemplates such a far-reaching change in our governmental framework as to amount to a qualitative constitutional revision, an undertaking beyond the reach of the initiative process." (*Id.* at p. 341.) The court

In determining whether a sentence is cruel or unusual, it is appropriate to examine whether the penalty is grossly disproportionate to the crime committed and also whether the punishment fits the offender. (*In re Lynch, supra,* 8 Cal.3d at pp. 431, 437.)

The offenses for which defendant was convicted in this case—failure to register—are obviously nonviolent offenses. Before 1995, failure to register was a misdemeanor offense. (See former Pen. Code, § 290, subd. (g)(1); Stats. 1993, ch. 595, § 8, p. 3134.) Even now, violation of section 290 (without prior "strikes") is punishable by the lowest triad of punishments: 16 months, or two or three years. (Pen. Code, § 290, subd. (g)(2).)

The majority make much of defendant's record of offenses and justify his sentence primarily on this ground. However, defendant committed his most recent sex offenses some 23 years ago, in 1981. He committed his most recent felony offense in 1990—more than nine years before he failed to register. Defendant's prior felony offenses are old and stale and his recent conduct—exemplified by nine years of felony-free life—indicates that he had turned the corner on his felonious past.

In considering the nature of the offender, the evidence on this record (including the probation report) is uncontradicted that defendant was suffering from AIDS, that he became homeless, that he was living on the street, and that eventually he moved in with his sister-in-law for several months. The reason that defendant tendered for failing to register—that he was dying of AIDS and was consumed by it—is uncontradicted on this record and is entirely plausible.

This is a pathetic case. This is not a case in which defendant has done anything to justify imposition of a term of 25 years to life in state prison, let alone the draconian two-year consecutive term (on top of the 25-year-to-life term) for failing to register on his birthday.

It is no answer to say that we are protecting society from contamination by one with AIDS (and the majority do not so argue). We do not, should not, and constitutionally cannot incarcerate persons *in state prison* because they have a disease like AIDS. (*Robinson v. California* (1962) 370 U.S. 660, 666–667 [8 L.Ed.2d 758, 82 S.Ct. 1417] [statute making narcotics addiction a criminal offense violated cruel and unusual punishment clause].)

What are we doing sending this 52-year-old dying man to state prison for 27 years to life? What has become of our society? Why has "compassion" become a dirty word in the law? There can be no justice without a fair measure of compassion in an appropriate case. I think that, some years from

therefore held that "new article I, section 24, represents an invalid revision of the California Constitution." (*Id.* at p. 355.)

now, law professors and law students will read this case and will ask, "What on earth were they thinking?"

Considering this record as a whole, the sentence imposed in this case is so disproportionate to the crime for which it is inflicted that it shocks my conscience and offends my fundamental notions of human dignity. (*In re Lynch, supra,* 8 Cal.3d 410, 424.) Because defendant's sentence was unconstitutional, the trial court abused its discretion in refusing to strike defendant's strikes, as defendant contends, because striking the strikes would have allowed the court to impose a constitutional sentence.

I would affirm defendant's convictions and remand to the trial court for resentencing.

A petition for a rehearing was denied November 17, 2004, and appellant's petition for review by the Supreme Court was denied January 26, 2005. George, C. J., did not participate therein.