Filed 11/13/13  P. v. Elliott CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DION LYDALE ELLIOTT,<br><br>        Defendant and Appellant. | C071330<br><br>(Super. Ct. No. 11F06594) |

A jury convicted defendant Dion Lydale Elliott of driving under the influence of alcohol (Veh. Code, § 23152, subd. (a); undesignated section references are to this code; count one) and driving with a blood-alcohol content of 0.08 percent or more (§ 23152, subd. (b); count two).  The jury also found that defendant's blood-alcohol content was 0.15 percent or more within the meaning of section 23578.  Prior to trial, defendant pleaded no contest to driving on a suspended or revoked driver's license, a misdemeanor (§ 14601.2, subd. (a); count three) and admitted three priors for the same conduct (§§ 14601.1, 14601.2).  In bifurcated proceedings, defendant admitted a strike prior [2008

1

criminal threats] (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) and prior prison term allegations (Pen. Code, § 667.5, subd. (b)).

Sentenced to state prison for an aggregate term of 11 years, defendant appeals. He contends counsel rendered ineffective assistance by failing to call an expert to challenge the reliability of the breath-testing machine and the breath-test results. He also contends his 11-year sentence constitutes cruel and unusual punishment. We affirm the judgment.

FACTS

At 2:08 a.m. on September 10, 2011, California Highway Patrol officers observed defendant's car weaving from lane to lane (a three-lane weaver) on the Business Loop of Interstate 80 (Capital City Freeway) near Arden Way. The officers activated their emergency lights and, using the public address system on the patrol car, directed defendant to exit onto El Camino Avenue and then onto Albatross Way. Defendant did so but drove abnormally, driving for a time on the shoulder of the highway and varying his speed. When Officer Stephen Newman approached defendant's car to explain the reason for the stop, the officer could smell the odor of alcohol coming from defendant through the open driver's side window. Defendant's eyes were very red and his speech was very slow and thick. Officer Newman directed defendant to get out of his car. Defendant got out slowly and when he walked, he staggered. The officer asked defendant a series of questions to determine whether there was a reason for driving poorly, such as whether he had any physical disabilities or mechanical problems with his car. Defendant had none and did not indicate whether he had any problem with his eyes. When the officer asked if defendant had anything to drink, defendant responded that he had consumed "a lot of alcohol" at a bar in midtown between 9:00 p.m. and 11:00 p.m. and that he was "lit." Defendant failed the horizontal gaze nystagmus test and the officer concluded that defendant had a blood-alcohol content (BAC) of at least 0.10 percent. Defendant refused to perform other field sobriety tests including the preliminary alcohol screening test. Defendant was arrested at 2:16 a.m. and transported to the county jail.

2

Along the way, the officers stopped and arrested another drunk driver.  At the jail, Officer Newman used a Drager Alcotest machine and defendant provided two successful breath samples, the first at 3:23 a.m. which tested at 0.17 percent and the second at 3:31 a.m. which tested at 0.16 percent BAC.

A criminalist testified as an expert in forensic alcohol analysis on the rate of absorption and elimination.  Based on a hypothetical question using defendant's test results of 0.17 BAC at 3:23 a.m., his weight of 320 pounds, and consumption of alcohol between 9:00 and 11:00 p.m., the criminalist opined that a person would have consumed between approximately 22 and 22 and a half drink equivalents, was fully absorbed at 2:08 a.m. and had a BAC of 0.195 when he was driving.

DISCUSSION

I

Defendant first contends that defense counsel's failure to retain a physiologist as an expert to challenge the breath-test machine and test results constituted ineffective assistance.  We reject defendant's contention.

To establish ineffective assistance of counsel, defendant must demonstrate that counsel's performance was deficient and that defendant suffered prejudice as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 691-692 [80 L.Ed.2d 674, 693, 696]; *People v. Ledesma* (1987) 43 Cal.3d 171, 215-218.)  "In determining whether counsel's performance was deficient, a court must in general exercise deferential scrutiny.  [Citations.]" (*People v. Ledesma, supra*, 43 Cal.3d at p. 216.)  To establish counsel's performance was deficient, defendant must show that "trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates." (*People v. Pope* (1979) 23 Cal.3d 412, 425.)  We review the record for any explanation for the challenged act or omission.  If an explanation exists, we must determine whether "counsel was reasonably competent and acting as a conscientious, diligent advocate." (*Id.* at p. 425.)  When the record is silent, "unless counsel was asked

3

for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the judgment is affirmed on appeal. (*Id.* at p. 426.) We do not engage " 'in the perilous process of second-guessing.' [Citation.]" (*Ibid.*) We will " 'reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission.' [Citation.]" (*People v. Zapien* (1993) 4 Cal.4th 929, 980.)

Defendant claims that defense counsel should have called a physiologist expert to testify that the breath-test machine was flawed. Defendant quotes from an American Law Reports annotation, " '[A] small error could conceivably turn a marginally legal reading into an illegal reading. Based on statements made by expert witnesses and agreed with by some of the courts represented in this annotation, that type of error is definitely possible, although perhaps very rare.' (See 90 A.L.R.4th 155, § 2, p. 161.)" Defendant argues, "A physiologist expert could only have highlighted the shortfalls of the breath-test results in a persuasive scientific context. There could be no downside or possible explanation why [defendant's] counsel should not have engaged an expert witness to challenge the breath-test results."

Defendant cites *People v. Vangelder* (2011) 197 Cal.App.4th 1, review granted October 19, 2011, S195423, even though he recognizes the Supreme Court granted review. The case it not lawfully citable and will not be considered. (See Cal. Rules of Court, rules 8.1105(e) [with an exception not applicable here, "an opinion is no longer considered published if the Supreme Court grants review"], 8.1115 [with exceptions not applicable here, "an opinion of a California Court of Appeal . . . that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action"].)

Defendant's allegations are just that and do not establish counsel's performance was deficient. The blood-alcohol readings of .17 and .16 were not "marginally legal readings." They were twice the legal limit. Moreover, defendant does not cite any

authority which requires defense counsel to call a defense expert on alleged defects of the breath-test machine and results. "Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence, whether pretrial, at trial, or both. There are, however, 'countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.' [Citation.] Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach. [Citation.] It can be assumed that in some cases counsel would be deemed ineffective for failing to consult or rely on experts, but even that formulation is sufficiently general that state courts would have wide latitude in applying it." (*Harrington v. Richter* (2011) 562 U.S. ___, ___, [178 L.Ed.2d 624, 643].) *Harrington* noted that in Richter's case, "there were any number of hypothetical experts -- specialists in psychiatry, psychology, ballistics, fingerprints, tire treads, physiology, or numerous other disciplines and subdisciplines -- whose insight might possibly have been useful. . . . [Citation.] Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies. [Citations.]" (*Id.* at pp. ___ [178 L.Ed.2d at pp. 643-644.)

Here, the record does not reflect that counsel was ever asked about not providing an expert to challenge the breath-test machine and test results. However, there is a satisfactory explanation. Defense counsel was entitled to formulate a strategy that was reasonable at the time that did not require the use of a physiologist expert regarding the machine and results. Defense counsel challenged the assumptions concerning when defendant finished consuming his drinks and what he consumed, which the prosecution's criminalist admitted could change defendant's BAC to 0.07 when he was driving. Defendant has failed to demonstrate that counsel's performance was deficient.

5

II

Defendant contends his "eleven-year sentence for drunk driving, where no accident occurred and no one was injured," constitutes cruel and unusual punishment under the state and federal Constitutions. We reject this claim.

Defendant did not raise this issue at the time of sentencing so this issue is forfeited. (*People v. Russell* (2010) 187 Cal.App.4th 981, 993.) Since defendant claims counsel rendered ineffective assistance in failing to raise the issue, we reach the merits and reject his claim. We start by noting that defendant's premise is simply wrong. He was not sentenced to state prison for 11 years for drunk driving or, as defendant contends, "for being an alcoholic." He was sentenced to the upper term of three years for drunk driving (count one), doubled for his strike prior to six years. The court stayed sentence on count two. The court imposed one year for each of his five prior prison terms. The court also imposed 30 days, with credit for time served, for count three.

The Eighth Amendment to the United States Constitution "forbids cruel and unusual punishments" and "contains a 'narrow proportionality principle' that 'applies to noncapital sentences.' [Citations.]" (*Ewing v. California* (2003) 538 U.S. 11, 20 [155 L.Ed.2d 108, 117] (*Ewing*).) The proportionality principle " 'does not require strict proportionality between crime and sentence' " but does prohibit " 'extreme sentences that are "grossly disproportionate" to the crime.' [Citation.]" (*Ewing, supra*, 538 U.S. at p. 23.)

In a proportionality analysis, we consider objective criteria: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." (*Solem v. Helm* (1983) 463 U.S. 277, 292 [77 L.Ed.2d 637, 650].) The second and third criteria are considered if, in the rare case, there is an inference that the sentence is grossly disproportionate under the first criteria. (*Harmelin v. Michigan* (1991) 501 U.S. 957, 1005 [115 L.Ed.2d 836] (*Kennedy, J.*, conc. in pt. & conc. in

judg.).)  In a noncapital case, a successful challenge to proportionality is " 'exceedingly rare.' "  (*Ewing, supra*, 538 U.S. at p. 21.)

Ewing upheld the defendant's three strikes prison sentence of 25 years to life for grand theft of a few golf clubs with four prior serious or violent felonies.  (*Ewing, supra*, 538 U.S. at pp. 17-20.)  In considering the gravity of the offense, *Ewing* cited the defendant's current felony as well as his lengthy criminal history.  "Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions.  In imposing a three strikes sentence, the State's interest is not merely punishing the offense of conviction . . .  'It is in addition the interest . . . in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.'  [Citations.]"  (*Id.* at p. 29; see also *People v. Meeks* (2004) 123 Cal.App.4th 695, 708.)  "Recidivism has long been recognized as a legitimate basis for increased punishment."  (*Ewing, supra,* at p. 25.)

Here, defendant's 11-year sentence is far less severe than the term of 25 years to life imposed upon the defendant in *Ewing.*  While defendant's overall sentence may seem grossly disproportionate to the crime of drunk driving by someone *without* a serious or violent criminal history, defendant has shown he is incapable of conforming to the criminal law.

Defendant misplaces his reliance on *People v. Carmony* (2005) 127 Cal.App.4th 1066 in which this court held that a three strikes sentence of 25 years to life for "failure to provide duplicative [sex offender] registration information is grossly disproportionate to the offense" because the defendant's offense was "an entirely passive, harmless, and technical violation of the registration law . . . ."  (*Id.* at pp. 1073, 1077.)  Here, drunk driving is not passive, harmless, or a technical violation of the law and defendant was not sentenced to a prison term of 25 years to life.  Defendant's sentence is not grossly disproportionate to his offense.

The California Constitution prohibits "[c]ruel *or* unusual punishment." (Cal. Const., art. I, § 17, italics added.) "[A] punishment may violate the [California Constitution] if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 (*Lynch*), fn. omitted.) *Lynch* described three "techniques" to use "in administering this rule": (1) an examination of the "nature of the offense and/or the offender, with particular regard to the degree of danger both present to society" (*id.* at p. 425); (2) a comparison of the challenged penalty with the punishments prescribed in the same jurisdiction for more serious offenses (*id.* at p. 426); and (3) "a comparison of the challenged penalty with the punishments prescribed for the same offense in other jurisdictions having an identical or similar constitutional provision." (*Id.* at p. 427, italics omitted.)

With respect to the first *Lynch* technique, the offense of drunk driving is not a minor offense -- it endangers others on the road. When considered in light of defendant's history of recidivism which includes many drunk driving offenses, prior felony offenses including battery with serious injury, discharging a firearm, and criminal threats, and prior prison terms, harsh punishment is justified. (See *People v. Meeks, supra*, 123 Cal.App.4th at pp. 709-710.) With respect to the second *Lynch* technique, defendant's punishment is no more severe than punishment for an offender, with a similar criminal history, who commits a more serious offense in California. With respect to the third *Lynch* technique, defendant offers no comparison of the challenged penalty with the punishments prescribed for the same offense in other jurisdictions having an identical or similar constitutional provision. Defendant has not shown that his punishment shocks the conscience or offends fundamental notions of human dignity.

Defendant's 11-year sentence for drunk driving *and* his life of crime does not constitute cruel and unusual punishment under either the state or federal Constitutions. Thus, defense counsel's failure to object to defendant's sentence does not constitute

8

ineffective assistance of counsel. The frailty, indeed, futility of defendant's argument becomes self-evident by noting the trial court's exercise of discretion, as requested by the prosecutor and the probation officer, to impose consecutive one-year terms for only five of his seven admitted prior prison terms.

DISPOSITION

The judgment is affirmed.


      NICHOLSON     , J.


We concur:


     BLEASE       , Acting P. J.


     HULL       , J.