Filed 8/5/24  P. v. Miller CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>CHRISTOPHER MILLER,<br><br>        Defendant and Appellant. | A168367<br><br>(Contra Costa County<br>Super. Ct. No. 05001204387) |

Defendant Christopher Miller appeals an order resentencing him under Penal Code section 1172.75.[1]  He contends the trial court should have stayed the sentence for one or more of his convictions of failing to register as a sex offender.  We conclude that the sentence for one of these convictions must be stayed under section 654.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant was previously convicted of possessing child pornography, which required him to register as a sex offender.  He was released from prison in December 2008, and thereafter he failed to complete his sex offender registration.

---

[1] All undesignated statutory references are to the Penal Code.

1

Around February 2009, defendant began living in the home of his friend Jonathan, who had foster children.[2]  One of Jonathan's foster children was a friend of John Doe 1 (Doe 1) and John Doe 2 (Doe 2), two brothers who were 11 and seven years old respectively in February.  Doe 1 and Doe 2 would often visit Jonathan's house and frequently spent the night there.  During those visits, Doe 1 began sleeping in defendant's bedroom and sharing a bed with him, and defendant repeatedly sexually molested him.

During this period, the mother of Doe 1 and Doe 2 (Mother) became friendly with defendant.  She did not know he was required to register as a sex offender.  On June 1, 2009, defendant moved into the home Mother shared with Doe 1 and Doe 2, where he occupied his own room.[3]  Doe 1 often spent the night in defendant's bedroom, initially on a sofa or a second bed, but eventually in the same bed as defendant.  Defendant continued to commit sexual crimes against Doe 1.

Defendant was arrested on December 1, 2009.

---

[2] Defendant testified at trial that he met Jonathan on the internet, in a chat group or message board for men who shared a sexual interest in boys. Defendant did not tell Jonathan he was a registered sex offender because he wanted to live with Jonathan and knew that a foster parent would not be allowed to live with a sex offender.  In the interest of the privacy of the children involved in this case, we will refer to Jonathan solely by his first name.

[3] Mother's testimony was less specific; she recalled that defendant moved in the last week of May or the first week of June, but defendant testified to the more precise date of June 1, 2009.  He also testified he had to move out of Jonathan's home because he learned about a month beforehand that Jonathan was going to move to a different city and be a foster parent there, and defendant knew that if he moved with Jonathan he would be fingerprinted and his criminal history would be exposed.

A jury convicted defendant of 29 counts of committing a lewd act on a child under the age of 14 (§ 288, subd. (a); counts 1 through 29), one count of possessing child pornography (§ 311.11, subd. (b); count 30), and three counts of failure to register as a sex offender: one for failing to register upon his release from incarceration (§ 290.015, subd. (a); count 31); one for failing to complete his annual registration within five working days of his birthday (§ 290.012, subd. (a); count 33); and one for failing to register within five working days of a change of residence (§ 290, subd. (b); count 34). Two enhancement allegations for prior prison terms under section 667.5, subdivision (b) were found true. The trial court imposed the upper term of eight years for count 1 and consecutive terms for all remaining counts, for a total sentence of 69 years and four months in state prison.

It appears that in June 2022, the California Department of Corrections and Rehabilitation (CDCR) notified the trial court that defendant might be entitled to relief under section 1172.75, which invalidates certain prior prison term enhancements imposed under section 667.5, subdivision (b) and establishes a mechanism for resentencing after the CDCR provides this notification.[4]

---

[4] Section 1172.75 requires the CDCR to identify inmates who may be eligible for relief and provide that information to the sentencing court that imposed the enhancement. (§ 1172.75, subd. (b).) This action vests the trial court with jurisdiction to resentence the defendant, even after the judgment is final. (*People v. Cota* (2023) 97 Cal.App.5th 318, 332–333; *People v. Escobedo* (2023) 95 Cal.App.5th 440, 447–449.) Here, the CDCR sent a list of eligible inmates to the Contra Costa County Public Defender's Office on June 29, 2022; it is the CDCR's practice also to send the lists to the trial court. Although the trial court did not retain emails from June 2022, we will presume that the CDCR carried out its duty to provide the information to the trial court as well. (See Evid. Code, § 664 [presuming that official duty is regularly performed]; *People v. Tenner* (1993) 6 Cal.4th 559, 566.) The

A resentencing hearing took place on July 20, 2023. Among other things, defendant asked the court to stay two of his sentences for failing to register as a sex offender under section 654. The trial court denied this request, instead striking the two one-year prior prison terms enhancements and making no other changes to the original sentence.

**DISCUSSION**

Section 654 prohibits "[a]n act or omission that is punishable in different ways by different provisions" from being "punished under more than one provision." (§ 654, subd. (a).) Thus, a defendant may not receive multiple punishment for "a single act or indivisible course of conduct"; rather, all but one sentence for that act or course of conduct must be stayed. (*People v. Hester* (2000) 22 Cal.4th 290, 294.)

In considering whether multiple punishment is proper, courts follow "a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citations.] We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives." (*People v. Corpening* (2016) 2 Cal.5th 307, 311 (*Corpening*).)

In considering whether a defendant acted with only a single intent and objective, courts must apply a "rigorous" test rather than taking " 'a "broad and amorphous" view' " of the defendant's intent. (*People v. Morelos* (2008)

Attorney General does not dispute that the trial court had jurisdiction to resentence defendant.

4

168 Cal.App.4th 758, 769, citing *People v. Harrison* (1989) 48 Cal.3d 321, 335–336.) Our high court has cautioned against accepting such a "broad, overriding intent and objective" as to "preclude punishment for otherwise clearly separate offenses," because that would violate the statute's purpose to "[e]nsure that a defendant's punishment will be commensurate with his culpability." (*People v. Perez* (1979) 23 Cal.3d 545, 552 [multiple sexual crimes against single victim for purpose of sexual gratification could be punished separately].) We uphold a trial court's express or implied determination that crimes involved separate objectives if supported by substantial evidence. (*People v. Brents* (2012) 53 Cal.4th 599, 618.)

These principles have been applied in the context of multiple convictions for failure to register as a sex offender. Two cases are particularly pertinent to our inquiry. The first is *People v. Britt* (2004) 32 Cal.4th 944 (*Britt*). The defendant in *Britt* moved from one county to another and failed to notify authorities in either county of the move, in violation of two statutory provisions requiring him to notify the authorities in both his former and new residences. (*Id*. at p. 949, 951 & fns. 2 & 3; former § 290, subds. (a)(1)(A) & (f)(1).) Our high court first noted that the defendant could properly be convicted of both offenses. (*Britt*, at p. 951.) However, the court continued, section 654 barred multiple *punishment* for the two offenses, which were based on a single change of residence. The court explained: " 'The purpose of [the registration requirements] is to assure that persons convicted of [sexual offenses] shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future.' [Citations.] Defendant's objective in *violating* [section 290] was the opposite of the government's—to *avoid* police surveillance. To fulfill this objective, he committed *two* crimes of omission, but each crime

5

furthered the same objective. The failure to notify the former jurisdiction ([former] § 290, subd. (f)(1)) and the failure to register in the new jurisdiction ([former] § 290, subd. (a)(1)(A)) were means of achieving the same objective— to prevent *any* law enforcement authority from learning of his current residence." (*Britt*, at p. 952.) The court thus held that a person who violates separate reporting requirements through a single change of residence may be punished for only one of those crimes. (*Id.* at pp. 953–954; see also *People v. Villegas* (2012) 205 Cal.App.4th 642, 648–649 [following *Britt*, defendant could not be punished both for not filing a change of address and not providing new address in another state].)

On different facts, the appellate court in *People v. Meeks* (2004) 123 Cal.App.4th 695 (*Meeks*) reached a different conclusion. The defendant there was convicted of two counts of failing to register as a sex offender over largely overlapping periods that ended when the defendant was arrested: one for failing to register within five days of changing his address between January 1 and May 15, 2000 (former § 290, subd. (a)(1)(A)), and one for failing to register within five days of his birthday between December 1, 1999 and May 15, 2000[5] (former § 290, subd. (a)(1)(D)), and the trial court imposed sentences for both offenses. (*Meeks*, at pp. 699–700, 703.) After rejecting the defendant's contention that, because the duty to register is a continuing one,

_____

[5] The defendant's birthday was on December 3, and he last registered in mid-December 1997. (*Meeks*, *supra*, 123 Cal.App.4th at p. 705.) He also changed his residence more than once between this last registration and March 2000. (*Id.* at pp. 700–701, 705.) The opinion in *Meeks* does not explain why the time periods for the charged offenses were limited as they were, but it does explain that the offenses were continuing ones, that is, that they continued as long as the duty to register persisted and the defendant failed to do so. (*Id.* at p. 703.)

6

he could be *convicted* of only one offense of failure to register (*id.* at pp. 702–703), the appellate court likewise rejected his argument that he could be *sentenced* for only one offense (*id.* at pp. 703–706). In doing so, it distinguished *Britt* on the ground that the defendant in *Britt* needed to avoid his reporting obligations in both counties to fulfill his objective of avoiding police surveillance. (*Meeks*, at pp. 704–705.) In *Meeks*, in contrast, the court explained there were multiple events that triggered the defendant's obligation to register: his birthdays on December 3, 1998 and 1999, and changes in residence occurring sometime in 1998, in January 1999 when he was evicted and became homeless, and in February or March 2000 when he moved in with a family member. (*Id.* at pp. 700–701, 705.) "Although the periods for [the two charged] offenses overlap somewhat and the objective of each is the same, it cannot reasonably be argued that defendant can be punished only once for each successive failure to register," the court concluded. (*Id.* at p. 705.)[6]

---

[6] The facts of *Meeks* are complicated. The defendant there was convicted of one count of failing to register within five days of his birthday and one count of failing to register within five days of a move, offenses that took place respectively between December 1, 1999 and May 15, 2000 and between January 1 and May 15, 2000. (*Meeks, supra,* 123 Cal.App.4th at pp. 699–700.) But the evidence showed he twice failed to register upon his birthday (by December 8, 1998 and 1999), and three times failed to register a move (when he was evicted sometime in 1998, when he was again evicted in January 1999, and when he moved into a new home in February or March of 2000). (*Meeks, supra,* 123 Cal.App.4th at pp. 699–701, 705.) As the Attorney General points out, in the course of its analysis the appellate court noted, "[a]lthough conceivably the triggering events of defendant's two [1998] registration requirements could have come on the same day, if defendant was evicted on this birthday, the triggering events were nevertheless distinct." (*Id.* at p. 705.) True enough. But that does not mean that if those were the only two triggering events and they took place on the same day, the defendant would have had separate intents and objectives in concealing his

7

Defendant acknowledges *Meeks*, but he argues that it is not good law on this point in light of Supreme Court precedent. In particular, he points to *Corpening*, *supra*, 2 Cal.5th 307. The question in *Corpening* was whether the forceful taking of a vehicle, which accomplished the crimes of both robbery and carjacking, was a "single physical act subject to the prohibition on multiple punishment under section 654." (*Id.* at p. 309.) Setting forth the applicable law, the court explained that application of section 654 "requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citations.] We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single physical act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives." (*Id.* at p. 311.) In *Corpening*, the court reached only the first step of that inquiry, concluding that a single physical act served as the basis for both crimes and that multiple punishment was therefore improper, thus ending its analysis. (*Id.* at p. 316.)

Relying on *Corpening*, defendant argues that all three offenses of failure to register furthered the same intent and objective—that is, to prevent law enforcement from learning his whereabouts—and that multiple punishment is therefore improper under the second step of the test set forth in *Corpening*.

whereabouts, and the *Meeks* court did not so hold. In any case, the events of 1998 do not appear to be the basis for the defendant's convictions of failing to register in late 1999 or early 2000.

We do not give *Corpening* such a cramped interpretation. While all three of defendant's registration offenses may have shared a generic objective to avoid surveillance, there was a significant separation in time between the offense charged in count 31 and those charged in counts 33 and 34. That is, count 31 was based on defendant's failure to register upon his release from custody in 2008. The other two offenses took place months later, around June 1, 2009, at a time when defendant was moving into a home where a child victim of his ongoing sexual abuse resided. This record supports a reasonable inference that defendant's general intent to avoid surveillance at the time of his release was distinct from his particular objective several months later to live with Doe 1 undisturbed, so as to continue his sexual crimes against him.

There is a more persuasive argument that defendant may not be punished separately for counts 33 and 34, however. In count 33, defendant was charged with failure to complete his annual registration within five working days of his May 28, 2009 birthday, which fell on a Thursday.[7] (§ 290.012, subd. (a).) In count 34, he was charged with failure to register within five working days of a change of address. (§ 290, subd. (b).) The record in the underlying case indicates defendant moved in with Mother on or about Monday, June 1, 2009, a mere two working days after his birthday. It thus appears that there was an overlap of several days during which he could have simultaneously satisfied both registration requirements with a single visit to the police station.

---

[7] We grant defendant's May 31, 2024 request for judicial notice of the calendars for May and June 2009.

9

In the context of these two offenses, *Meeks* is readily distinguishable. As in *Meeks*, there was more than one triggering event and thus there were separate offenses. (See *Meeks*, *supra*, 123 Cal.App.4th at p. 705.) But the two triggering events in the case before us were so close in time that defendant had not yet committed the crime of failing to register within five working days of his birthday when his obligation to register upon his move to Mother's home arose. (See *Wright v. Superior Court* (1997) 15 Cal.4th 521, 526 [offense complete at expiration of grace period].) In *Meeks*, on the other hand, the evidence showed that the defendant's failure to register his most recent change of address did not take place until two or three months after his most recent birthday. (*Meeks*, at pp. 701, 705.) As to these offenses, thus, the crimes—although continuing in nature—were completed at different times.

The case before us is in some respects similar to *Britt*, in that defendant here had to avoid his registration requirement as to *both* those triggering events to achieve a single objective of obscuring from authorities his residence as of June 1, and as a result maintaining access to Doe 1. (*Britt*, *supra*, 32 Cal.4th at p. 953.) Thus, as to these largely simultaneous offenses, "each failure to report *was* 'a means toward the objective of the commission of the other.' " (*Ibid*.)

In fact, this case may present a stronger argument for the application of section 654 than *Britt*, since here defendant's single omission was his failure to register in the first few days of June 2009. This act, or failure to act was the basis for the charge in both counts 33 and 34. Thus, as in *Corpening*, the court need only have reached the first step of the two-part inquiry, concluding that because a single physical act or omission served as the basis for both crimes, multiple punishment was therefore improper,

10

without regard to whether defendant harbored a single or multiple objectives. (*Corpening*, *supra*, 2 Cal.5th at pp. 311, 316.)

The Attorney General suggests that defendant's failure to register within five days of his May 28 birthday was intended to forward the goal of continuing to live with Jonathan and his foster children, a goal separate from his goal of living with Mother and Doe 1. But we have already explained that the record indicates defendant moved to Mother's home before his crime of failing to register upon his birthday was complete. Even if we reach the second step of the inquiry, we are not persuaded that substantial evidence supports a conclusion that defendant had separate intents and objectives for failing to register within five working days of his birthday and of his move to Mother's house. The trial court must therefore stay the sentence for either count 33 or count 34.

## DISPOSITION

The judgment is reversed in part. On remand, the trial court is directed to stay the sentence for either count 33 or count 34. The clerk of the superior court shall prepare an amended abstract of judgment and forward it to the CDCR. In all other respects, the judgment is affirmed.


TUCHER, P.J.


WE CONCUR:

FUJISAKI, J.
PETROU, J.


*People v. Miller* (A168367)

11