Filed 4/2/15  P. v. Moore CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058917 |
| v. | (Super.Ct.No. FBA1100147) |
| DUSTIN PAUL MOORE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  R. Glenn Yabuno, Judge.  Affirmed with directions.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Dustin Paul Moore was charged by amended information with carjacking (Pen. Code, § 215, subd. (a), count 1),[1] two counts of robbery (§ 211, counts 2 & 3), two counts of kidnapping for the purpose of robbery (§ 209, subd. (b)(1), counts 4 & 5), and two counts of false imprisonment by violence (§ 236, counts 6 & 7). As to each count, it was alleged that defendant knew a principal was armed with a firearm during the commission of the offense (§ 12022, subd. (d)), and that defendant personally used a knife during the commission of each offense (§ 12022, subd. (b)(1)). It was further alleged that he had three prior strike convictions. (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i).) A jury found defendant guilty of carjacking (count 1), robbery (counts 2 & 3) and false imprisonment (counts 6 & 7). The jury also found all of the allegations true. The trial court dismissed the charges in counts 4 and 5 (kidnapping for robbery), pursuant to the People's motion. The court imposed the following sentence: on count 1, 27 years to life, plus a three-year consecutive term for the section 12022, subdivision (d) enhancement; on counts 2, 3, 6, and 7, consecutive terms of 25 years to life. The court imposed but stayed the terms on the remaining enhancements. Thus, the court sentenced defendant to a total term of 130 years to life in state prison.

On appeal, defendant contends: (1) the sentences on several of the counts should have been stayed under section 654; (2) the trial court failed to recognize its discretion to impose concurrent terms on the counts; (3) the matter should be remanded since the court

---

[1] All further statutory references will be to the Penal Code, unless otherwise noted.

2

erred in imposing the firearm enhancements under section 12022, subdivision (d), instead

of section 12022, subdivision (a)(1); (4) the sentencing enhancements attached to

unstayed counts should have been stricken instead of stayed; and (5) his sentence

constituted cruel and unusual punishment.  We agree that the court should have imposed

the firearm enhancements under section 12022, subdivision (a)(1), and that the court

erred in staying the enhancement terms.  We also agree that the court did not appear to

recognize its discretion to impose the terms concurrently.  We remand the matter for the

court to correct these errors.  In all other respects, we affirm.

### FACTUAL BACKGROUND[2]

Monique Venegas was in a relationship with Efrain Jara.  She was in Arizona and

wanted to come and stay with him, so she asked him to pick her up.  He agreed to drive to

Bullhead City, Arizona, to pick up Venegas and bring her back to California.  He rented a

car to drive out to Arizona, and his brother, Reginaldo Jara, went with him.[3]  When they

arrived at the house address provided by Venegas, she asked them to park the car on the

next street over and wait for her.  She then approached the car with two male friends,

defendant and Jacob David.  They were all carrying luggage.  Efrain did not know the

two males, and Venegas just said they were with her and were coming too.  After putting

---

[2]  This statement of facts is taken from this court's unpublished opinion filed on
November 28, 2012.  (See *People v. Venegas* (Nov. 28, 2012, E054927) [nonpub. opn.].)

[3]  We will refer to Efrain and Reginaldo Jara by their first names when speaking of
them individually, and as "the victims" when speaking of them collectively.  We mean no
disrespect by the use of their first names.

3

the luggage in the trunk, Venegas, David, and defendant (the defendants) got into the backseat of the car. Efrain sat in the front passenger seat, and Reginaldo drove.

Venegas later said she was hungry, so they stopped at a restaurant. Venegas, Efrain, and defendant went inside. Reginaldo and David stayed in the car. While inside the restaurant, Venegas asked Efrain if he had received his income tax refund yet. Efrain thought it was an odd question, and said no. As they were waiting outside, David asked Reginaldo to open the trunk. Reginaldo opened the trunk and went back inside the car. When the three others returned to the car, the defendants got in the backseat. Venegas sat in the middle seat, between David and defendant.

About 30 to 40 minutes after they got on the freeway, Efrain noticed that defendant and David started smoking a pipe. Reginaldo said, "Hey, no smoking." Efrain looked back and saw that David had a gun on his lap, so he told his brother, "Don't say nothing, he has a gun." About five minutes later, Efrain heard one of the defendants say something like, "how we gonna do this?" Then, David held the gun to Reginaldo's neck, and defendant held a knife to Efrain's neck.[4] David told the victims to give him and defendant their cell phones and wallets.[5] They also asked for their PIN numbers. Efrain said he did not have a PIN number, and defendant poked him with the knife. Reginaldo

[4] There appears to be some confusion in the record regarding which codefendant was sitting behind the driver, Reginaldo, and which one was sitting behind Efrain. In light of the jury's findings that David personally used a firearm and defendant personally used a knife, we will assume that David was sitting behind Reginaldo, holding the gun, and defendant was sitting behind Efrain, holding the knife.

[5] Before giving them his wallet, Reginaldo took the money (about $200) out and threw it (the money) on the floorboard.

said a number, and Venegas repeated the number to defendant and David. Reginaldo continued to drive for another two hours or so to Barstow. He could not stop the car or speed up because defendant and David would either poke him with the gun or the knife. He believed he could not stop the car until they told him to.

About one hour before they reached Barstow, Efrain was ordered to take off his shoes, socks, and belt. He passed them to the backseat. David and defendant took a chain necklace and a belt from Reginaldo.

Reginaldo continued to drive and was instructed to exit the freeway in Barstow. Defendant and David first directed him to drive to an alley. Then, they had him drive to an apartment complex parking lot about five minutes away. Defendant and David put on gloves and covered their faces, and Efrain recalled them "wiping all the evidence." Defendant and David again demanded the PIN numbers and threatened to shoot the victims. Reginaldo gave them $100, and they asked if he had any more money. One of the defendants told Reginaldo to get out of the car. Defendant got into the driver's seat. He then told Efrain to get out of the car and go to the backseat. However, David told Efrain to stay in the front seat. Efrain acted like he did not understand what do to, as he opened the door and got out. He then pushed the door, ran, and told his brother to run. They ran to a few apartments until they found someone to help them and call the police. Defendant, David, and Venegas drove off in the car. The police arrived at the apartment complex about five minutes later.

5

ANALYSIS

I. Section 654 Did Not Apply

Defendant contends that the consecutive 25-year-to-life terms for the robbery of Reginaldo (count 2) and the false imprisonments (counts 6 & 7) should have been stayed pursuant to section 654. He specifically argues that the sentence on count 2 should have been stayed because the robbery and carjacking of Reginaldo were part of an indivisible course of conduct. He also argues that the sentences on the false imprisonment convictions (counts 6 & 7) should have been stayed under section 654 since the offenses were indivisible from the robberies of Reginaldo and Efrain, and they were lesser included offenses of the charged kidnappings. We disagree.

A. *Relevant Law*

Section 654, subdivision (a), provides, in pertinent part, that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." "Section 654 precludes multiple punishments for a single act or indivisible course of conduct. [Citation.]" (*People v. Hester* (2000) 22 Cal.4th 290, 294.) "The purpose of section 654 is to prevent multiple punishment for a single act or omission [or indivisible course of conduct], even though that act or omission [or indivisible course of conduct] violates more than one statute and thus constitutes more than one crime. . . ." (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135 (*Liu*); see *People v. Harrison* (1989) 48 Cal.3d 321, 335.) "The divisibility of a course of conduct depends upon the intent and objective of

6

the defendant. If all the offenses are incidental to one objective, the defendant may be punished for any one of them, but not for more than one. On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct. [Citations.] The principal inquiry in each case is whether the defendant's criminal intent and objective were single or multiple. Each case must be determined on its own facts. [Citations.] The question whether the defendant entertained multiple criminal objectives is one of fact for the trial court, and its findings on this question will be upheld on appeal if there is any substantial evidence to support them. [Citations.]" (*Liu*, *supra*, 46 Cal.App.4th at pp. 1135-1136.)

B. *The Court Properly Sentenced Defendant on Counts 2, 6, and 7*

Defendant essentially argues that the carjacking, robberies, and false imprisonments were part of a continuing course of conduct. Therefore, he contends that the sentences on counts 2, 6, and 7 violated section 654. We disagree.

1. _Section 654 Does Not Apply to Stay the Sentence on Count 2_

Defendant specifically contends that the sentence on count 2 (robbery of Reginaldo) violated section 654 because the robbery of Reginaldo continued up to the moment when he was told to get out of the car. In other words, there was insufficient evidence that defendant had a different intent in taking the car (carjacking) than in robbing Reginaldo. We disagree.

7

Defendant relies upon *People v. Dominguez* (1995) 38 Cal.App.4th 410 (*Dominguez*), in arguing that the robbery and carjacking constituted a continuous course of conduct. However, *Dominguez* is factually distinguishable. In that case, the defendant entered a van, put a "cold and metallic object" against the victim's neck, and said, """"Give me everything you have."""" (*Id*. at p. 414.) The victim gave defendant two rings and a chain, and then got out of the van and fled. (*Id*. at p. 415.) The defendant was convicted of carjacking and robbery. (*Id*. at p. 414.) The prosecutor conceded the applicability of section 654 in the trial court, but the trial court erroneously imposed a concurrent term for the robbery instead of staying the term under section 654. (*Dominguez*, at pp. 419-420.) In correcting the error, the appellate court explained that the victim simultaneously "handed over his jewelry and van by handing over the jewelry and fleeing the van." (*Id*. at p. 420.) Thus, the "same act" of placing the weapon to the back of the victim's neck "was essential to both offenses and thus [was] not separately punishable" under section 654. (*Dominguez*, at p. 420.)

Defendant here argues that, like *Dominguez*, *supra*, 38 Cal.App.4th 410, the robbery was still in progress when the car was taken. However, in *Dominguez*, the robbery and carjacking were considered simultaneous because the victim handed over his jewelry and *immediately* ran out of his van. (*Id*. at pp. 415, 420.) In the instant case, the victims handed over their personal property long before they reached Barstow. The evidence showed that, shortly after they left the restaurant, defendant and David took out a knife and gun and demanded that the victims give them their cell phones and wallets. They also demanded Efrain's shoes, socks, and belt, as well as Reginaldo's necklace and

8

belt.  Instead of telling the victims to get out of the car after obtaining their property, defendant and his cohorts waited until they arrived in Barstow, at least an hour later.  In other words, the victims did not flee from the car *immediately* thereafter, as in *Dominguez*.  The evidence does not demonstrate an indivisible course of conduct.  The robbery occurred when defendant and David threatened Reginaldo with a gun and demanded his personal property.  The carjacking occurred later when defendant and David ordered Reginaldo out of the car, one of them got into the driver's seat, and the defendants drove away.

Additionally, defendant relies upon *People v. Ortega* (1998) 19 Cal.4th 686 (*Ortega*), but that case is also distinguishable.  *Ortega* addressed the issue of "when a defendant may receive multiple *convictions* for offenses arising out of a single act or course of conduct."  (*Id*. at p. 692.)  As the *Ortega* court stated, "[t]his issue must be distinguished from the closely related question of when a defendant may receive multiple *sentences* based upon a single act or course of conduct."  (*Ibid*.)  Since *Ortega* did not concern section 654, it is not pertinent here.

Ultimately, because the carjacking and robbery of Reginaldo did not constitute an indivisible course of conduct, section 654 did not apply to stay the sentence on count 2.

2.  *Section 654 Did Not Apply to the Sentences on Counts 6 and 7*

Defendant further argues that the false imprisonment of the victims was merely incidental to the robberies, and that all of his actions were undertaken pursuant to only one objective, to take the victims' property.  He thus contends that section 654 requires

9

that the sentences on the false imprisonment convictions in counts 6 and 7 be stayed. We disagree.

The evidence showed that the false imprisonment of the victims occurred *after* the defendants initially pulled out the gun and knife and took the victims' personal property. About 45 minutes after they left the restaurant, David held a gun to Reginaldo's neck, defendant held a knife to Efrain's neck, and they proceeded to rob them of their personal property. The false imprisonment then began as they forced Reginaldo to drive to their desired location in Barstow. Reginaldo could not stop the car or speed up because defendant and/or David would either poke him with the gun or with the knife. He believed he could not stop the car until they told him to. The false imprisonment continued for approximately two hours, until they reached their destination in Barstow, and the victims fled from the car. Thus, the false imprisonment went far beyond what was necessary to accomplish the robbery of the victims. Moreover, the objective of the robbery was to take the victims' property. The apparent objective of the false imprisonment was to force the victims to drive the defendants to Barstow. The evidence indicates that the defendants had some type of plan there, since they directed Reginaldo to drive to a certain apartment complex and, once there, they put on gloves and covered their faces.

Defendant also argues that *if* he had been convicted of kidnapping for robbery, as charged in counts 4 and 5, the false imprisonment charges would have been stricken as lesser included offenses of kidnapping; then, the sentences on the kidnapping convictions would have been stayed under section 654, since he could not be sentenced for both the

10

kidnappings and the robberies. He somehow concludes that "[i]t is axiomatic, therefore, that the false imprisonment charges must be stayed pursuant to section 654." Defendant's argument is completely inapposite since he was not convicted of kidnapping for the purpose of robbery. In fact, the kidnapping for robbery charges (counts 4 & 5) were dismissed.

We conclude that the trial court properly sentenced defendant on counts 6 and 7.

## II. The Court Erred in Imposing the Enhancements Under
## Section 12022, Subdivision (d)

Defendant next argues that the court erred when it imposed firearm enhancements under section 12022, subdivision (d), rather than subdivision (a)(1). He notes that section 12022, subdivision (d), applies only to narcotics offenses, and he was not convicted of a narcotics offense. Thus, he contends that the enhancements imposed under section 12022, subdivision (d), were unauthorized and must be reduced to the enhancements under section 12022, subdivision (a)(1). Respondent concedes, and we agree.

Penal Code section 12022, subdivision (d), provides, in relevant part, that "a person who is not personally armed with a firearm who, knowing that another principal is personally armed with a firearm, is a principal in the commission of an offense or attempted offense specified in subdivision (c), shall be punished by an additional and consecutive term of imprisonment pursuant to subdivision (h) of Section 1170 for one, two, or three years." Subdivision (c) lists certain Health and Safety Code violations. All other felonies, including those for the crimes in the instant case, fall under Penal Code section 12022, subdivision (a)(1), which authorizes an additional one-year term for "a

11

person who is armed with a firearm in the commission of a felony." Subdivision (a) specifies that the additional term applies to "a person who is a principal . . . if one or more of the principals is armed with a firearm, whether or not the person is personally armed with a firearm." (Pen. Code, § 12022, subd. (a)(1).)

Here, defendant was initially charged with several offenses, including transportation of methamphetamine. (Health & Saf. Code, § 11379, subd. (a).) The information also alleged that, during the commission of the charged offenses, defendant knew that a principal was armed, within the meaning of Penal Code section 12022, subdivision (d). The prosecutor then filed an amended information which dismissed the methamphetamine charge. The arming enhancements, however, remained the same. The jury found true the allegations that David personally used a handgun during the commission of each of the counts.

At sentencing, for the firearm enhancements under section 12022, subdivision (d), the trial court imposed a consecutive three years on count 1, and one-third of the middle term of three years (or one year) on counts 2, 3, 6, and 7. However, because defendant was not convicted of any narcotics offenses, the court erred in sentencing him pursuant to section 12022, subdivision (d). The unauthorized sentence must be vacated and a proper sentence imposed. (See *People v. Hickey* (1980) 109 Cal.App.3d 426, 435.) The parties agree that the enhancements under section 12022, subdivision (a)(1), apply instead. Therefore, the matter is remanded for the judgment to be modified to apply the firearm enhancement under section 12022, subdivision (a)(1), instead of section 12022, subdivision (d), thereby reducing the principal armed enhancement on count 1 (the

12

principal term) to one year and reducing the enhancements on the other counts to four months.  (§ 1170.1.)**6**

### III.  The Trial Court Erred in Staying the Terms on the Enhancements

The court here imposed a three-year enhancement term pursuant to section 12022, subdivision (d), which was attached to count 1, and it stayed the remaining section 12022, subdivisions (b) and (d) terms.  Defendant contends that the trial court erred in staying the terms on the enhancements under subdivisions (b) and (d) of section 12022. He argues that the terms should have been stricken under the court's discretionary authority, pursuant to section 1385.  The People concede that the enhancements were improperly stayed, but assert that the matter should be remanded for the court to exercise its discretion to either impose or strike the enhancement terms.  We agree with the People.

"Enhancements do not define a crime but merely impose an additional punishment to that which accompanies the criminal offense itself.  [Citation.]  An enhancement is not a sentencing choice.  [Citation.]  Unless a statute says otherwise, an enhancement may be

---

**6** Section 1170.1, subdivision (a), provides, in relevant part:  "Except as otherwise provided by law, and subject to Section 654, when any person is convicted of two or more felonies . . . and a consecutive term of imprisonment is imposed under Sections 669 and 1170, the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term imposed for applicable enhancements for prior convictions, prior prison terms, and Section 12022.1. The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any term imposed for applicable specific enhancements.  The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses."

13

imposed or stricken, but this is the extent of the trial court's discretion. [Citation.] Imposition of sentence on an enhancement may not be stayed; to do so is an illegal sentence. [Citation.]" (*People v. Harvey* (1991) 233 Cal.App.3d 1206, 1231; see *People v. Haykel* (2002) 96 Cal.App.4th 146, 151.)

Here, the court stayed all but one of the enhancements. The case is remanded to allow the court to exercise its discretion and either impose or strike the stayed enhancements.[7]

IV. The Court Did Not Recognize Its Discretion to Impose Concurrent Terms

Defendant argues that the trial court mistakenly thought that consecutive terms were mandatory pursuant to sections 1170.12, subdivision (a)(7), and 667, subdivision (c)(7). He contends the court failed to recognize that it had discretion to impose concurrent terms if the current convictions were committed on the same occasion and arose from the same set of operative facts. Thus, he asserts that the matter should be remanded for resentencing. The People argue that the court was aware of its discretion. We agree with defendant.

A. *Relevant Background*

At the sentencing hearing, defendant, in propria persona, asked the court to impose one life term and impose the other terms concurrently. Defendant called the court's attention to section 667, subdivision (c)(6), and argued that, where there were multiple

---

[7] As discussed *ante*, the court should either impose or strike firearm enhancements under section 12022, subdivision (a)(1), rather than section 12022, subdivision (d). (See § II, *ante*.)

14

convictions for felonies not committed on the same occasion and not arising from the same set of operative facts, the court had to sentence defendant consecutively on each count. However, he argued that his case "[did not] fall under that consecutive statute." The court clarified that defendant was contending that his convictions did arise on the same occasion and did arise from the same set of operative facts. Defendant affirmed and further cited section 1170.12, subdivision (a)(6).

The prosecutor responded that those statutes did not apply to defendant and asserted that "because of the violent nature of the felonies and because the operative facts and/or elements of the offenses are different, they are eligible for consecutive sentencing under the law." She then stated her belief that, because of the violent nature of the current convictions and the fact that defendant was being sentenced pursuant to the three strikes law, "they're not only eligible for consecutive sentencing, but . . . it's mandatory consecutive sentencing."

The court immediately cited section 1170.12, subdivision (a)(7), to state that, if there was a current conviction for more than one serious or violent felony as described in subdivision (b), "the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law." The court noted that the same language was contained in section 667, subdivision (c)(7). The court allowed defendant to make a final statement and then proceeded to sentence him to consecutive life terms on counts 1, 2, 3, 6, and 7.

15

B.  *The Court Appeared to Mistakenly Believe It Had to Impose Consecutive Terms*

Section 667, subdivision (c), provides:  "Notwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more serious and/or violent prior felony convictions as defined in subdivision (d), the court shall adhere to each of the following:  [¶] . . . [¶]

"(6)  If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e).

"(7)  If there is a current conviction for more than one serious or violent felony as described in paragraph (6), the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law."

In *People v. Hendrix* (1997) 16 Cal.4th 508 (*Hendrix*), the issue was whether consecutive sentences were mandatory under section 667, subdivisions (c)(6), (c)(7), or (e)(2)(B), when the defendant had two or more prior felony convictions within the meaning of subdivision (d), and committed serious or violent felonies against multiple victims at the same time.  (*Hendrix*, at p. 511.)  The court explained that subdivision (c)(6) provided that consecutive sentencing was mandatory for *any* current felony convictions "'not committed on the same occasion, and not arising from the same set of operative facts.'"  (*Hendrix*, at p. 512; see § 667, subd. (c)(6).)  However, subdivision (c)(7) applied when there was "more than one current serious or violent felony."  (*Hendrix*, at p. 513.)  The court went on to explain that the meaning of

16

the reference to "'paragraph (6)'" in subdivision (c)(7) was that it referred to subdivision (c)(6). (*Hendrix*, at p. 513.) The court stated that "when a defendant is convicted of two or more current serious or violent felonies 'not committed on the same occasion, and not arising from the same set of operative facts,' not only must the court impose the sentences for these serious or violent offenses consecutive to each other, it must also impose these sentences 'consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law.'" (*Ibid.*) The court concluded that, "[b]y implication, consecutive sentences are *not* mandated under subdivision (c)(7) if all of the serious or violent current felony convictions are 'committed on the same occasion' or 'aris[e] from the same set of operative facts.'" (*Ibid.*, italics added.)

The People concede that when a defendant is convicted of multiple counts arising from a single incident, the trial court has the discretion to impose either consecutive or concurrent terms. (*Hendrix*, *supra*, 16 Cal.4th at p. 513.) However, the People claim there is no indication that the court was not aware of this discretion. We agree with defendant that the court apparently believed it had no discretion. The record shows that the prosecutor asserted her belief that, because of the violent nature of the current convictions and the fact that defendant was being sentenced pursuant to the three strikes law, consecutive sentencing was mandatory. The court then appeared to agree with the prosecutor, as it responded by citing section 1170.12, subdivision (a)(7), and noting that it contained the same language as section 667, subdivision (c)(7). The court went on to sentence defendant to consecutive life terms. We note that the court gave no indication

17

that it considered whether the current offenses were committed on the same occasion or arose from the same set of facts. Thus, the record indicates that the court mistakenly agreed with the prosecutor that it was required to impose consecutive sentences, pursuant to sections 1170.12, subdivision (a)(7), and 667, subdivision (c)(7), simply because of the nature of the current convictions.

The matter is remanded for the court to exercise its discretion in determining whether to impose the terms consecutively or concurrently, pursuant to section 667, subdivision (c)(6) and (c)(7).

### V.  Defendant's Sentence Is Not Cruel and Unusual Punishment

Defendant contends that his sentence of 130 years to life constitutes cruel and unusual punishment under the state and federal Constitutions. We disagree.

At the outset, we note that defendant admits he did not raise the issue of cruel and unusual punishment at the trial level. Some courts have held that, when the issue of cruel and unusual punishment is not raised at the trial level, it is waived on appeal. (*People v. Ross* (1994) 28 Cal.App.4th 1151, 1157, fn. 8; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27.) Nevertheless, we will assume for the purpose of discussion that defendant did not waive his right to raise the argument on appeal and accordingly consider the issue.

Under the prevailing view, the Eighth Amendment of the federal Constitution is violated when a sentence is "'grossly disproportionate'" to the crime. (*Harmelin v. Michigan* (1991) 501 U.S. 957, 1001.) Similarly, the California Constitution is violated when the punishment "'is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' [Citation.]"

18

(*People v. Meeks* (2004) 123 Cal.App.4th 695, 709 (*Meeks*).)  Under California's three strikes law, when the defendant has at least two prior strike convictions, the Legislature has set life sentences as the appropriate penalty for any current felony.  (§§ 667, subd. (e), 1170.12, subd. (c).)  Under the statute, a 25-year-to-life prison sentence is imposed not only for the defendant's current felony, but also for his recidivism.  (See *People v. Mantanez* (2002) 98 Cal.App.4th 354, 366.)  Lengthy prison sentences imposed under a recidivist statute have long survived scrutiny under both Constitutions.  (See, e.g., *People v. Weaver* (1984) 161 Cal.App.3d 119, 125.)  When reviewing a claim of disproportionality or cruel or unusual punishment under the state Constitution, we: (1) examine the nature of the offense and offender; (2) compare the punishment with the penalty for more serious crimes in the same jurisdiction; and (3) measure the punishment to the penalty for the same offense in different jurisdictions.  (*In re Lynch* (1972) 8 Cal.3d 410, 425-427 (*Lynch*); *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1510-1517.)

Regarding the first prong or the nature of the offense and the offender, we evaluate the circumstances of the current offenses, including motive, the extent of the defendant's involvement, the manner in which the crime was committed, and the consequences of the defendant's acts.  (*People v. Lucero* (2000) 23 Cal.4th 692, 739.)  We also examine the defendant's personal characteristics, including his or her age, prior criminality, and mental capabilities.  (*Ibid.*)

Defendant argues that, with regard to the current offenses, he was not the individual using the gun, he did not hurt anyone, and he did not leave the victims "stranded in the desert where they could have been in serious danger with no means of

19

getting help." While these factors are true, defendant ignores the facts that he wielded a knife, he terrorized the victims for hours, robbed them of their personal possessions, and falsely imprisoned them. Moreover, while defendant did not leave the victims "stranded in the desert," that hardly mitigates the danger he put them in by falsely imprisoning them by gunpoint and knifepoint.

Furthermore, defendant was only 27 years old at the time he committed the current offenses. Even at that young age, he already had previous felony convictions for receiving stolen property (Pen. Code, § 496, subd. (a)), unlawful taking of a vehicle without consent (Veh. Code, § 10851, subd. (a)), robbery (Pen. Code, § 212.5), and armed robbery. He had also served at least two state prison terms.

Defendant argues that the People will undoubtedly assert that "the magnitude of the offense must be measured in light of [his] prior convictions." He claims "[t]hat is not correct," and that he should be punished for the crimes he committed in the instant case only. He argues that he already served time for his prior offenses, and that he cannot again be punished for those crimes without violation prohibitions against double jeopardy. However, defendant is not being punished again for his prior crimes. His 130-year-to-life sentence was properly based on his *recidivism*. "[A] defendant's history of recidivism, which is part of the nature of the offense and the offender, justifies harsh punishment." (*Meeks*, *supra*, 123 Cal.App.4th at p. 709.) "Recidivism in the commission of multiple felonies poses a manifest danger to society justifying the imposition of longer sentences for subsequent offenses." (*People v. Kinsey* (1995) 40 Cal.App.4th 1621, 1630.)

The next step in the *Lynch* analysis is to compare defendant's punishment with punishments prescribed for more serious crimes. However, this portion of the analysis is inapplicable to sentencing under the three strikes law. (*People v. Cline* (1998) 60 Cal.App.4th 1327, 1338 [Fourth Dist., Div. Two] (*Cline*).) This is so because "it is a defendant's 'recidivism in combination with his current crimes that places him under the three strikes law. Because the Legislature may constitutionally enact statutes imposing more severe punishment for habitual criminals, it is illogical to compare [defendant's] punishment for his "offense," which includes his recidivist behavior, to the punishment of others who have committed more serious crimes, but have not qualified as repeat felons.' [Citation.]" (*Ibid.*)

The third prong of *Lynch* calls for comparison of the California punishment with punishment for the same crimes in other states. "[A] comparison of California's punishment for recidivists with punishment for recidivists in other states shows that many of the statutory schemes provide for life imprisonment for repeat offenders, and several states provide for life imprisonment without possibility of parole. California's scheme is part of a nationwide pattern of statutes calling for severe punishments for recidivist offenders. [Citation.]" (*Cline*, *supra*, 60 Cal.App.4th at p. 1338.)

As to his argument that his sentence is cruel and unusual punishment under the Eighth Amendment of the federal Constitution, defendant cites to the *dissenting* opinions in *Ewing v. California* (2003) 538 U.S. 11 (*Ewing*), where a minority of four justices found the defendant's sentence grossly disproportionate. Clearly, *Ewing* does not support defendant's argument, since the United States Supreme Court in that case held that the

21

defendant's sentence, imposed for felony grand theft under the three strikes law, was *not* grossly disproportionate and thus did not violate the Eighth Amendment. (*Ewing*, at pp. 30-31.) As stated in that case, "[w]hen the California Legislature enacted the three strikes law, it made a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime. Nothing in the Eighth Amendment prohibits California from making that choice. To the contrary, our cases establish that 'States have a valid interest in deterring and segregating habitual criminals.' [Citations.] Recidivism has long been recognized as a legitimate basis for increased punishment." (*Id*. at p. 25.)

Defendant has had ample opportunity to reform his behavior, but has not chosen to do so. We conclude that his sentence does not constitute cruel and unusual punishment under either the state or federal Constitution.

## DISPOSITION

The matter is remanded for the superior court to modify the judgment to impose the firearm enhancements pursuant to section 12022, subdivision (a)(1), rather than section 12022, subdivision (d). The court must also exercise its discretion and either impose or strike the stayed enhancements. The matter is further remanded for the court

22

to exercise its discretion in determining whether to sentence defendant concurrently or consecutively.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>HOLLENHORST</u>
J.

We concur:

<u>RAMIREZ</u>
P. J.

<u>McKINSTER</u>
J.